Gaston, J.
 

 It is assigned for error on the part of the prisoners, that, upon their arraignment, it was prayed by their counsel that they should be permitted to pléad not guilty severally, and that the. court refused this permission. We admit, without hesitation, that they should have so pleaded, and that the refusal of his honor was founded in a mistake of the law. But the record states generally that the defendants pleaded not guilty, and thereupon a jury was duly empannelled, and charged to try whether they were guilty or not guilty of the offence charged in the indictment. Now, in contemplation of law, the plea was a several one, and the jury was empannell.ed to try the question of
 
 guilt as
 
 to each of the defendants. No idea was entertained, much less such an .extravagant position taken, that if one were guilty all were guilty. It distinctly appears in the case, that the jury was instructed, as to a part of the evidence, that, although it raised a strong presumption of guilt against one of the defendants, it raised no presumption against the others. As, therefore, no error appears upon the record, and th.e mistake set forth in the case was harmless and inoperative, we capnot reverse the judgment because .of this ex? eeption.
 

 It has been stated at the bar, and we have no doubt correctly, that the true question, intended to have been submitted to, and decided by, the court, was, whether the prisoners were entitled to claim separate trials, and
 
 that
 
 question has accordingly been here argued. Although it is not properly presented to us, we will not decline to express our opinion upon it. This question was fully examined in the case of the
 
 United States
 
 v
 
 Marchant
 
 &
 
 Colson,
 
 first in the Circuit Court for the District of Massachusetts, and afterwards in the Supreme Court of the United States. The caséis reported in 1 Mason 158, and 12 Wheaton 480, and all the learning, applicable to the question, will be found stated, and ably illustrated, in the opinion of Mr. Justice Story. It was decided with entire unanimity, that the court had a power,
 
 *405
 
 and would ordinarily exercise it, to direct separate trials at the request of the accused, when separate trials might be had without inconvenience, but that “this was a matter of sound discretion to be exercised by the court with all due regard and tenderness to prisoners, according to the known humanity of our criminal jurisprudence.” It was in that ease objected, as it has been argued here, that if a joint trialwere had, and the prisoners did not agree in the challenges, one might desire to retain a juror who was challenged by another: that a juror challenged by any one must be withdrawn -from the panel as to all the prisoners, and that thereby the right of each prisoner to select his jury would be im-. paired. But to this it was answered by the court, that the right of challenge was a right to reject (not a right to select) jurors — that neither of the prisoners had cause to complain that the others or any of them challenged a juror, by whom he was willing to be tried, but by whom he had no right to be tried — and that all the law designed, by conferring on him the privilege of challenge, was, to secure for the trial of his case unexceptionable jurors, and this it would secure to him, whether tried apart or together with the others jointly accused.
 

 It has been insisted in argument, that, where a separate trial is had, the prisoner may have witnesses, who cannot be admitted if he be tried jointly: for example, his co-defendant, or tlreir wives. But this is a mistake. Whether the trials be separate or not, one of several defendants, indicted together, connot, until he is finally discharged, be a witness for the others-, and wherever the wife of one is not permitted to testify for the others on a joint trial, she will not be received for them, although her husband be not then on trial. This court fully acquiesces in the reasoning and in the judgment of the case referred to, and believes that judgment to be in conformity with the usage and law of this State.
 

 = Another exception has been taken on the part of the defendant, Scipio Smith.' It is to that part of his Honor’s instruction to the jury, which he has stated as follows: “ On this part of the case, the court charged the jury that, if they believed the tobacco, found in the said house, to be the pro
 
 *406
 
 perty of Chambers, and that it had been stolen on the night before, the circumstance of the tobacco being found in the possession of the defendant, Scipio Smith,, so recently after {jacj been st0ien) raised a strong presumption of guilt against the defendant, Scipio Smith, but raised no presumption of guilt against the other defendants.” The part of the case to which the instruction refers,
 
 is
 
 as follows: that tobacco had been stolen from Chambers, the prosecutor, on Friday night; that on the next morning, Chambers followed the track of a cart from the neighborhood of histobacco bam to a house belonging to the defendant, Scipio Smith, situate on his land about 80 or 100 yards from his dwelling, and on the same day sued out a search-warrant, opened the house, and found there the stolen tobacco, which he claimed — that Scipio Smith, at the same time, claimed it as his
 
 tobacco,
 
 which was grown on a certain field of bis, and had been there housed by his direction — that there was a quantity of other tobacco in the same house — that the house was occupied by a negro man belonging to Scipio Smith — and that the other defendants, Gordon & William Smith, were the the sons of the said Scipio, and lived with him.
 

 In the opinion of this court, the circumstance of the stolen tobacco being
 
 thus
 
 found in the possession of the defendant Scipio, did not, in law, “ raise a strong presumption of his guilt,” and the instruction of the court below, on this part of the case, is erroneous.
 

 From necessity, the law must admit, in criminal as well as civil cases, presumptive evidence; but in criminal cases, it never allows to such evidence any
 
 technical
 
 or
 
 artificial
 
 operation, beyond its natural tendency to produce belief under the circumstances of the case. Presumptions of this kind are derived altogether by means of experience from the course of nature and the habits of society, and when they are termed legal presumptions, it is because they have been so frequently drawn under the sanction of legal tribunals, that they may be viewed as authorized presumptions. Among these, is that which was in the mind of his Honor, the recent possession of stolen goods, in the case of larceny, raising the presumption of an actual taking by the possessor.
 
 *407
 
 But when we examine the cases, in which such a presump-lion has been sanctioned, or consider the grounds of reason and experience on which the presumption is clearly warranted, we shall find that it applies oulv when this possession is of a kind which manifests that the stolen goods have come to the possessor by
 
 his own act,
 
 or, at all events, with his
 
 undoubted concurrence.
 
 A leading case is that mentioned by Lord Hale, in illustrating the doctrine of presumptions in criminal cases. “ In some cases (2 Hale’s Pleas of the Crown 289) presumptive evidences go far to prove a person guilty, though there be no express proof of the fact committed by him; but then it must be very warily pressed; for it is better five guilty persons should escape unpunished, than one innocent person should die. If a horse be stolen from A, and the same day B be found upon him, it is a strong presumption that
 
 B
 
 stole him, yet I do remember, before a very learned and wary judge, in such an instance B was condemned and executed at Oxford assizes; and yet within two assizes after, C being apprehended for another robbery and convicted, confessed upon his judgment and execution that he was the man that stole the horse, and being closely pursued, desired B, a stranger, to walk his horse for him, while he turned aside upon a necessary occasion and escaped; and B was apprehended with the horse and died innocently.” Here the horse hrd been stolen, and, on the day of the theft, B was found upon him. B had, unquestionably, therefore,
 
 taken
 
 the horse from some one, and on the very day of the theft — and because he could give no satisfactory explanation, that he got the horse from any other person, the presumption was allowed to be raised that he took the horse from the owner, and was, therefore, himself, the thief. An
 
 agent
 
 in the change of the possession was found — there was guilt by some one, in making the change — the circumstances all pointed to him as the person, and none raised a suspicion of any other — .the
 
 agent found
 
 was therefore presumed the
 
 guilty agent.
 
 The rule is thus stated by Mr. East (2 East’s Pleas of the Crown 656:) “ Wherever the property of one man, which has been taken from him without his consent, is found (recently after the taking) upon another, it is incum
 
 *408
 
 bent on that other to
 
 prove
 
 how
 
 he
 
 came by it; otherwise PresurnPti°n ^at he has taken it feloniously.” The .cases mentioned in illustration of this rule, are such as the following:
 
 “
 
 Upon an indictment for stealing in a dwelling-house, the defendant is apprehended a few yards from the outer door with the stolen goods in his possession,” (Arch-bold’s Crim. Pleader 123.) And the very common case, where a gentleman has his watch stolen from his fob in a crowd, and shortly thereafter it is found concealed about the person of one, who can give no rational account how he ob.tained it — these, raise the presumption of guilt against him thus found in possession. But it is obvious that presumptions of this kind, which even in the strongest cases are to be warily drawn, want one of the indispensable premises to warrant them, when the possession, from which a
 
 guilty
 
 taking is inferred, does not shew
 
 a taking
 
 or
 
 privity in taking
 
 on the part of the possessor. If the tobacco stolen could not have been deposited in this house of the accused with- - out his
 
 agency
 
 or privity, there would then have been a
 
 fact
 
 established, viz, that he had placed or caused it to be placed there since the theft, as a foundation for the inference of another fact that
 
 he
 
 had participated in the theft itself. But clearly the court could not, upon the evidence stated as all the evidence on that part of the case, declare the
 
 fact,
 
 forming the foundation of the inference, to be established, and, therefore, could not rightfully instruct the jury that the inference might legally be drawn therefrom.
 

 Nothing was said pointedly by his Honor regarding the claim set up by the accused to the property in the tobacco stolen, probably because he regarded such claim, taken in connection with the place where the tobacco was found, as evidencing no more than possession in the accused of the thing stolen, and, therefore, bringing the case within the operation of a precise rule of law. Nor can we draw any inference of guilt or innocence from it. If the tobacco of the prosecutor was so
 
 obviously
 
 different from the rest of the tobacco, that the prisoner could not have mistaken it for part of the crop which he had made and housed the preceding year, this would certainly have been an unfavorable circumstance
 
 *409
 
 against him; but if it might honestly have been so mistaken by him, the claim (to say the least of it) was not- incotisis-tent with the hypothesis of his innocence, A case in this respect strikingly analogous is found in the books. If the sheep of A stray from his flock to the flock of B, and B drive them along with his own flock, and by mistake, without knowing or taking heed of the difference, shear them, it is no felony. But if B knew them to be the sheep of another person, and tried to conceal that fact; if, for instance, finding another’s mark upon them, he defaced it and put his own mark upon them: this would be evidence of felony. 1 Hale 506-7. 2 Russel on crimes 98. It appears that there was other testimony, independently of that, which was regarded as raising the presumption of guilt against this defendant, tending to establish the charge against all the accused. How much of it applied to them respectively does not appear. But-as upon that other testimony, rejecting as to them the supposed presumption, the jury eonvicted the other two defendants, and as the court approved the verdict, and no exception is shewn on their behalf to any instruction of the court or other proceeding bearing upon them, we are bound to hold that they were guilty of the crime charged. Not only therefore can we not interfere to relieve them from the merited penalty of the law, but this their established guilt renders more apparent the fallacy which misled his Honor in the instruction excepted to by this defendant. The tobacco was stolen by the two sons, who resided with their father. It was found in a house on the father’s land, occupied by one of his negroes, together with other tobacco made and housed the former year. And these circumstances,
 
 of
 
 themselves, are supposed to raise, in law, a strong presumption of the father’s guilt. We cannot so believe; because, unless there be other facts and circumstances to warrant the inference, such a presumption would be rash and irrational.
 

 It may be that we have not clearly apprehended the sense and effect of the instruction excepted to, but we are constrained so to interpret it. And it may be that there was
 
 other
 
 evidence against the father, besides that upon which the erroneous instruction was given, to warrant the verdict '
 
 *410
 
 against him. But this we do not know, and if we did,' we are bound to say that as his case has been submitted to the jury, with■ instructions which we believe unwarranted in |aw¡ and which may hate- had an improper influence on their minds, he has not been tried according to Law, and is entitled to have another trials
 

 ' This-opinion will be certified to the Superior Court of Rockingham, with directions to set aside the verdict, as against the defendant Scipio Smith only, and to award an
 
 alias venire
 
 to try him upon this indictment, and to proceed to sentence upon the verdict against the • defendants,
 
 Gordon
 
 Smith and William Smith.
 

 Per Curiam,. Ordered accordingly.