Ruffin, C. J.
 

 The discussion in
 
 Benton’s case,
 
 2 Dev. and Bat. 196, of the point respecting the juror, left little to be said on the rule in our law on that subject; and it is only necessary to compare the present case with that, to see that this judgment cannot be reversed on the first ground. The conclusions, there arrived at, are, that an opinion fully made up and expressed is a good cause of principal challenge, as a matter of law; but that one imperfectly formed, or one merely hypothetical, that is,
 
 *63
 
 formed on the supposition that facts are as they have been represented, does not constitute cause of such a challenge, but “ of challenge to the favour, which is to be allowed or disallowed, as the triers shall find the fact of favour or indifierency.” When the record sets out simply the matter, alleged as the cause of challenge, and a disal-lowance of the challenge, the truth of the matter so alleged is understood to be admitted, and the decision is assumed to be of the matter of law, substantially as on demurrer. That, of course, can be reviewed. But, when upon evidence
 
 the fact
 
 of favour or indifierency is found, whether by triers, or by the Court in their stead, the finding cannot be reviewed, but is conclusive. Those are the general doctrines of that case. The particular circumstances of it were, that a juror was challenged by the prisoner, because he had formed and expressed an opinion, though he said further, that his opinion was not so fixed as to influence him in making up a verdict, but that he could pass impartially on the case after hearing the evidence ; and thereupon the record stated merely, that the Court over-ruled the challenge and put the prisoner to his peremptory challenge. Upon that record the Court held, that if it had appeared, that the opinion, which the juror had formed, was adverse to the prisoner, it would have been a good ground of principal challenge, notwithstanding the subsequent qualifications with which the juror described his opinion. But that was owing* to the state in which the record placed the case. It did not appear from what source the juror drew his opinion — whether from personal knowledge, or from his presence at an examination of witnesses respecting it, or from the relation of one who was present at it, or from newspapers or other medium of common fame. But even under those circumstances the Court considered, that, in point of fact, there was room for doubt, whether the juror had any fixed opinion or bias ; especially as it is common experience, that persons seek to be excused from
 
 *64
 
 serving- as jurors upon the ground of an opinion, when in truth they have none, that is fixed. And the Court said, that if it were so, then there would be but a cause of challenge to the favour; and the Judge, on becoming satisfied, that what the person called an opinion was not such in legal meaning, and had left no unfavorable bias upon the mind, would be perfectly correct in over-ruling the challenge. The difficulty, however, in that case was, that, though we might much suspect that to be the fact, as to the nature of the opinion or degree of bias, this Court could not judicially act on it, because we were bound down by the record, and that described the opinion “ as one formed and expressed,” and without farther explanation we must understand it to be fully formed and gravely expressed. We could not regard the subsequent explanation of the juror, because it was not inconsistent with that understanding, as many persons cannot divest themselves of settled opinions, and some even are so weak as to continue under the influence of impressions, or opinions — if they may be so called — ‘founded on ru-mour alone, and notwithstanding subsequent evidence to the contrary : and, at all events, as the indifferency was not found in the Superior Court, this Court could not assume it, but ought, if there were any doubt of it upon the whole record, to presume the fact most favourably to the prisoner, and understand the judgment to have been, that the alleged cause was insufficient in point of law.
 

 In the present case, however, the Court expressly finds
 
 the fact, “
 
 that the juror is indifferent;” and upon that finding proceeds to over-rule the challenge. The 'in-differency of the person at the time of the trial being admitted or established, we think it cannot be seriously doubted, that notwithstanding his previous impressions against the prisoner, he was a
 
 competent
 
 juror. The challenge could not be allowed, after that finding of the fact, unless it be the judgment of the law, that the human mind is so. constituted, that after entertaining from
 
 *65
 
 rumour an opinion of the guilt of an accused person, it cannot deliberately investigate that question upon evidence, and impartially decide accordingto it when legally given, or determine upon a defect of proof. We think there is no such rule of law, and that there ought not to be such a rule. Rumour is so proverbially false,- it would seem, that no man, with sense enough to sit on a jury in any case, could found upon it an opinion affecting the person or property of another, that would stand one moment in opposition to evidence, given on oath in a Court of justice, or on which he would pass the judgment of the law without evidence duly given. Little credit is due to rumour upon any subject ;■ and persons, conversant with judicial enquiries and discussions, know by experience, that perhaps less is to be allowed to it respecting controversies
 
 sub judice,
 
 than any thing else almost. Gentlemen of the bar are aware, that they can seldom rely even upon the relation of their clients for the facts of their own cases, as they are to appear to be on the trial from the evidence ; and they seldom- undertake to judge of the result until the proofs be closed. Such persons therefore find it difficult to conceive,- how the mind of an upright man can from sueh a source as rumour, derive an- impression, that can be properly called an opinion, that one is, or is not, guilty. But we suppose there are persons of minds too weak to distinguish the just grounds of decision, who might not be able to divert their attention from the rumour and direct it to the evidence : or with minds greedy of evil reports, and inclined to yield them credence, and obstinate in retaining and defending impressions from them ; and when a person is tendered as a juror, who, upon evidence of himself or others, is found to possess such a mind and such a disposition towards a party, it is a just exception to him. But, on the other hand, evidence, that a juror had upon-rumour formed an opinion and expressed it, does not conclusively establish, that it is really an opinion that would
 
 *66
 
 hinder an earnest investigation of the truth of the case, and an honest determination of it: in other words a fair trial — such a trial as the juror would give, if he had never heard the rumour. Such an opinion would seemt in its nature to be hypothetical — one, founded on the supposition, that the facts are according to the rumour; But admit it to be otherwise, and that, nothing else appearing, the forming and expressing an opinion upon the ground of rumour alone is,
 
 prima facie,
 
 evidence that the juror is not indifferent; yet when the party calls the challenged person as the witness to prove his state of mind and feelings towards him, and, after stating honestly what they had been, he proceeds further to depose, that he had only heard an account of a part of the case, and that, notwithstanding- his former opinion, his-mind was- then in a state to do impartial justice between the State and the prisoner, according to the evidence,that is clearly evidence on which there maybe
 
 a finding of the fact,
 
 that the person tendered was indifferent. Something might depend on the impression made on the triers by the appearance and examination of the person, as to his intelligence, his habit and capacity of investigating questions depending on evidence, the coolness of his-temper, and general impartiality and candour. But, certainly, for ordinary cases, the evidence here given was-sufficient to justify triers or the Court in finding this person “ to be indifferent,” and that he would
 
 well
 
 and
 
 truly.
 
 try the issue joined.” And it cannot be, that there is any rule of law, concluding the triers or Judge from finding as the fact, what so obviously ought to be, and so probably was, the fact. It having been found in this case, upon the prisoner’s own evidence, it is conclusive; and there cannot be a
 
 venire de novo
 
 on that.
 

 It also seems to the Court, that the prisoner can take no benefit from his other exception. His Honor did not express an opinion upon any fact in controversy; but merely applied a rule of law to an admitted fact. It was-
 
 *67
 
 not disputed, that the witnesses were the mother and sister of the prisoner; and the Court therefore did not err in so considering them. Nor was there error in telling the jury, that their relation to the prisoner affected their credit. That is a proposition of reason and law. The law takes notice that some relations are so close, that persons standing in them, though they might tell the truth, cannot be trusted in general; and therefore it excludes them altogether. That rule does not, indeed, embrace parents and children, or brethren. Yet all writers upon evidence say, that, though it does not make them incompetent, it goes to their credit; because we know that such relations create a strong bias, and that it is an infirmity of human nature sometimes, in instances of great peril to one of the parties, to yield to the bias produced by the depth of sympathy and identity of interests between persons so closely connected. How far these witnesses adhered to their integrity, or were drawn aside by the ties of nature between them and the prisoner, in other words, the degree in which the relation actually affected their veracity, was a question for the juryand his Honor left it to them explicitly. It was proper to let them know, that they might legally take the relation into their consideration in estimating the credit to be given to their testimony; and there was nothing improper in stating also the reason, on which the rule of law rests.
 

 The opinion of the Court is, that there was no error in the judgment; which will be certified to the Superior Court.
 

 Per Curiam. Ordered to be certified accordingly.