STATE *v.* DAVID COLLINS, ALEX. BLALOCK and JACOB HOOD.

In criminal trials against two or more defendants, the Judge has the right in his discretion to separate the evidence bearing upon the case of each, and to instruct the jury, as to what is competent against one, and incompetent against another.

It is no good cause of challenge that the juror has formed and expressed an opinion adverse to the prisoner, such opinion being founded on rumor—and the juror further stating that he could try the case according to the law and evidence, uninfluenced by any opinion he may have so formed from such rumor.

When several persons are jointly indicted, they cannot claim separate trials as a matter of right. Such separation is a matter of discretion with the Court.

In trials for capital felonies, the presiding Judge has the right to regulate by reasonable rules and limitations, the arguments in the cause: *Hence,* it is no good ground for a new trial, that the counsel of the prisoner was limited by the Court, in his remarks, to one hour and a half.

(*State* v. *Ellington*, 7 Ired. 61; *Benton's case*, 2 Dev. 8 Bat. 196; and *State* v. *Smith*, 2 Ired. 402, cited and approved.)

BYNUM, J., *dissenting.*

Indictment, for the murder of one Allen Jones, tried at Fall Term, 1873, of Johnston Superior Court, before *Watts, J.*

Upon the trial, the prisoners excepted to the rulings of his Honor, which exceptions were noted, and are fully set out in the opinion of the Court, and in the dissenting opinion of Justice Bynum, as are also the facts touching the points decided.

Collins and Blalock were convicted ; Hood acquitted. Motion for a new trial ; motion overruled. Judgment and appeal.

*Fuller & Ashe, Smith & Strong,* and *Spears,* for the prisoners.

*Attorney General Hargrove,* for the State.

Settle, J. The prisoners, together with one Hood, were tried at Fall Term, 1873, of the Superior Court for Johnston county, on an indictment charging them with the murder of one Allen Jones.

The jury returned a verdict acquitting Hood and convicting the prisoners. Several points made upon the record were abandoned upon the argument in this Court.

We will now consider all exceptions which require comment :

It would seem that the prisoner, Collins, joined the State in the prosecution of Hood, and introduced evidence against Hood, which also implicated Blalock. To this Blalock excepted.

His Honor allowed the jury to consider the evidence as against Hood, but told them it was not evidence against Blalock. There is nothing unusual in this practice. It frequently happens in joint trials that the Judge has to separate the evidence bearing upon the case of each prisoner, and instruct the jury as to what is competent against one and incompetent against another.

The prisoner Collins excepts,

1st. Because a juror was not rejected by the Court who stated that he " had formed or expressed " the opinion that the prisoner Collins was guilty, but who, on being asked the foun-

dation for his opinion, replied that it was founded upon rumor, and not upon any evidence; and in answer to a further question, he stated that he could try the case by the law and the evidence, and would not be influenced by any opinion he may have formed from rumor.

We understand from this, that when the juror was tendered he was challenged by the prisoner, Collins, for cause, and the cause assigned was that he had formed and expressed an opinion adverse to the prisoner, Collins, and therefore his Honor, (in the stead of triers,) after an examination of the juror, found him to be indifferent. The Court seems to have followed the practice adopted in the case of *State* v. *Ellington*, 7 Ired. 61, and the answers of the juror here are almost identical with those of a juror in that case.

The principles established in the case of the *State* v. *Ellington*, supra, following the case of the *State* v. *Benton*, 2 Dev. & Bat. 196, is, that an opinion fully made up and expressed is a good cause of principal challenge as a matter of law; but that one imperfectly formed, or one merely hypothetical, that is, formed on the supposition that the facts are as they have been represented, does not constitute cause of such a challenge, but of challenge to the favor, which is to be allowed or disallowed as the triers shall find the fact of favor or indifferency; and that when the Judge becomes satisfied that what the juror calls an opinion, was not such in legal meaning, and that it had left no unfavorable bias on his mind, the challenge should be overruled.

To the very satisfactory reasons given in Ellington's case for this practice, we will add, that in these days of newspapers, railroads and telegraphic communication, it is exceedingly difficult to find persons of sufficient intelligence to sit on a jury, who have not heard something of almost every capital crime which occurs in the State. And if we disqualify all who have received some impression from such information or rumors, and have casually expressed an opinion as to the guilt or innocence of the accused, we will exclude from the jury box the

best educated, and the most liberal minded portion of the community. The better informed a juror is, the more apt will he be to guard against improper influences.

2d. The prisoner, Collins, moved for a separate trial, stating that as he was a white man, and the other prisoners were colored, a severance was necessary to a fair trial. This motion was overruled, and Collins excepted.

Where several persons are jointly indicted they cannot claim separate trials as a matter of right.

Mr. Justice STORY says, in *United States* v. *Marchant and Colson,* "this is a matter of sound discretion, to be exercised by the Court with all due regard and tenderness to prisoners, according to the known humanity of our criminal jurisprudence."

The same doctrine is laid down by the text writers, and is quoted with approbation in this State, *State* v. *Smith,* 2 Ired., 402.

3d exception : "That in the argument of the case the constitutional rights of the prisoner, as declared in Art. 1, sec. 11 of the Constitution of North Carolina, were infringed, and in a great measure virtually denied him, inasmuch as only one hour and a half was allowed to him for the argument of his case, he asking for more time when the allotment of time was made by the presiding Judge; a large number of witnesses having been examined on both sides." In this country every one has a constitutional right in all criminal prosecutions to have counsel for his defence ; and if be be too poor to employ counsel, it is the duty of the Court to assign some one to defend him ; and it is the duty of the counsel thus assigned to give to the accused the benefit of his best exertions. It is gratifying to be able to state that the bench and the bar in North Carelina have always dealt mercifully and generously with those who have had the double misfortune to be stricken with poverty and accused of crime.

This, we believe, is the first complaint that has reached the ears of this Court that any one accused of crime has been de-

ried the full benefit of counsel for his defence. For although this right has sometimes been abused, yet the Judges, in the exercise of their discretion, have deemed it better to submit to an abuse rather than to have even the appearance of denying a right. We regret that complaint is now heard. And while we feel constrained by the weight of authority and reason to hold that a Judge must have the superintending control of his Court, with power to direct the proceedings of the same, so that the time shall not be wasted in arguments, disputes and contentions, having no tendency to bring about a fair and legal disposition of judicial business, yet we do not recommend the ruling of his Honor in the case before us as a precedent worthy of general imitation.

In *Wood's case*, 7 Leigh, 743, the Court refused to allow counsel to address either the jury or the Court. Upon appeal this was held to be error; but the Court say, " while we thus decide, we are not to be understood as restricting, in any degree, the power of the Court to prevent an abuse of this or any other right by exercising a proper control over the course of the argument."

In *Commonwealth* v. *Porter*, 10 Met. 263, the Court say, "it is within the legitimate power, and it is the duty of the Court to superintend the course of the trial; to decide upon the admission and rejection of evidence ; to decide upon the use of any books, papers, documents, cases or works of supposed authority which may be offered on either side ; to decide upon all collateral and incidental proceedings, and to confine parties and counsel to the matters within the issue."

In *Lynch* v. *The State*, 9 Indiana, 541, it is said, " the Court has a right to regulate by reasonable rules and limitations the argument of counsel. This is a necessary discretion to be possessed by the Court to prevent abuse."

The only case we have been able to find, which would seem to be in conflict with these authorities, is *The People* v. *Keenan*, 13 California, 581, where the counsel for the prisoner

was limited, in his argument, as in our case, to one hour and a half.

The Supreme Court, acting upon "the affidavits of counsel of respectability and standing, which shows that they were prevented, by this restriction from a full and fair defence of their client," granted a new trial, yet in doing so the Court say, "an enlarged discretion must necessarily be given to a Judge over this subject, and we should certainly with great reluctance disturb the exercise of that discretion in any given case. Nor do we here question the right of a District Judge to limit the counsel to a reasonable time in their arguments to the jury, though from the danger to which this power is exposed, it is perhaps better, if ever done at all in capital cases, that it should only be done in very extraordinary and peculiar instances."

It seems to us that the admission of a discretion in a Judge to limit the counsel is at the same time a denial of the right to review the exercise of that discretion.

While Judges, like other men, are liable to make mistakes, yet it is apprehended that the substantial ends of justice will be better served by giving to them the general supervision of the Courts, than by depriving them of powers necessary for the protection of the Courts, and the dispatch of business. It is to be presumed that the Judge who sees and hears all the incidents of a trial is better qualified to exercise a discretion, as to its conduct, than the Justices of the Supreme Court who have only the limited view afforded by the record. Upon consideration of the whole case we are of opinion that there is no error.

PER CURIAM.                    Judgment affirmed.

BYNUM, J., (*dissenting.*) In my opinion the prisoners have not been convicted according to law, but a startling and dangerous invasion has been made of the right of trial by jury, of the freedom and discretion of counsel, and of the constitutional

rights of the accused to a full and fair defence. *Art.* 1, *sec.* 11 of the Constitution declares, that " in all criminal prosecutions, every man has the right to be informed of the accusation against him, and to confront the accusers and witnesses with other testimony, and to have counsel for his defence," and this is again enjoined in a statute, Battle's Revisal, chap. 33, sec. 59, "every person accused of any crime, whatsoever, shall be entitled to counsel, in all matters which may be necessary for his defence."

If the counsel are not herein constituted the Judges of what may be necessary both to speak and do in the defence, then we are to reverse all the rules of interpretation, and forget all our knowledge of the duties and rights of counsel. The law does not confer arbitrary power on the Judge, nor impose tame submission on counsel. Each in his sphere is independent, and neither can encroach upon' the entire freedom and discretion of the other. It is only the *abuse* that can authorize interference, and when that occurs the counsel has a remedy by appeal, and the Judge by a direct interposition in the cause.

To me, it is an alarming proposition that a Judge who is not responsible for the right conduct of a cause, can without any necessity, cause, or reason, put the counsel of the accused under the ban by crippling his argument by an arbitrary restriction. If on a trial for murder, a prisoner without counsel should rise to address a jury for his life, and the Judge should command him to make his defence in one hour and a half, it would strike the spectators with surprise and indignation, yet it is settled that the counsel of the prisoner, has all the rights of the prisoner, and for the time, is the embodiment of the accused himself. Look at it. Three persons are on trial for their lives, and making several defences. Many witnesses are examined and the testimony is conflicting. The evidence is closed, and the argument about to begin. Just then, without any previous warning, the Judge announces to the prisoners' counsel, " you shall have only an hour and a half for your ad-

dress to the jury." And without time or opportunity to re-arrange and condense the argument within the limit, even if it were possible, and against the will of counsel, the trial is rushed through, with unprecedented haste, and the prisoners convicted ! "Next to doing right, the great object in the ad-ministration of public justice, should be to give public satis-faction."

When *Sir Walter Raleigh* was put on his trial for treason, the Judges attempted to stop him, in his defence, but he had the manhood to assert his rights. "*My Lords,*" said he, "*I stand for my life.*" Posterity has vindicated him and con-demned his Judges.

In the times of the *Stuarts* it was not uncommon to try, convict and execute a dozen persons at a time, and in one day, but a capital trial is not now what it was then. In the eye of the law and christian civilization, human life has more signifi-cance, the safeguards thrown around it are proportionately in-creased, and the science of defence more minute, intricate and exhaustive. Trials which formerly would occupy hours only, now require days and often weeks. Who can know what word or thought may strike the mind of a jury and turn the balanced scale in favor of human life, or when that word or thought may be uttered ? If, therefore, a turn of thought or a suggestion which might legitimately be made, is cut off and excluded from the jury by a causeless limitation of time, and a life is lost in consequence, a fearful accountability rests some-where.

I do not claim to restrict the legal discretion of the Judge, or any of his functions as a presiding magistrate. I only affirm that he cannot limit the legal discretion of counsel, to conduct his defence as his judgment and conscience may dictate, under the solemn trust imposed on him, not by leave of the Court, but by the authority of the law, equally binding upon Judge and counsel. There is no pretense here, that the counsel was abusing his privilege, for the argument had not begun. If a Judge can ever interfere, as here, it must be to arrest an *actual*

*abuse*, not to anticipate what may never occur, and cramp and fetter the freedom of debate, by arbitrary and embarrassing restrictions.

The question is not whether the Judge can supervise and control the proceedings of the Court, but whether he can, without cause or provocation at his own will and caprice, interfere with and control others, who are in the regular and legal discharge of the most grave and solemn duty which can be imposed on them. Was time important? No; the trial began on Monday, and Court was adjourned on Wednesday. Are men to be tried for their lives by the hour glass? Courts of *Justice* are instituted for no such purpose, and to bend them to it is a perversion, and they become engines of oppression. A slight self-examination will show us that we may impose voluntary restrictions upon ourselves, because we are therein governed by a knowledge of our own powers and capacities to do a given thing in a given time. But when others who have not this knowledge, impose restrictions against our consent, the mind instinctively feels, and is shackled and imprisoned. It is only when free from restraint, like the body, that all its activities can be brought into action, and what more sacred and awful demand can be made for the development of all its varied powers and energies than in defence of human life!

The judicial annals of our State, it is believed, afford no other instance of such an exercise of power. It is without precedent here. On the contrary, it is within the memory of many that an eminent counsel in this State, confessedly spoke against time, to save the life of the accused by the expiration of the term of the Court. *State* v. *Spier*, 1 Dev., 491. If there could be an occasion for the interference of the Court, that was one, for the term could not be extended to the end of the trial, as now. Yet the Judge dared not to stop the counsel, and the Legislature sanctioned the conduct of the Judge, for shortly thereafter, and in consequence of this very case, it passed an act, enabling the Judge, *in capital cases only*, to extend the term from day to day, until the trial is finished. Rev.

Code, chap. 31, sec. 16.   Thus we have the legislative construction of the force and extent of that humane provision of the Constitution in favor of life.   It cannot be that we are called upon to furnish the authority of precedents to sanction the instincts of our nature in common with the brutes, the right of self-defence, but if so, we have only to open our eyes to the living history around us.   From the time of ERSKINE, who first fixed the rights of counsel, of juries, and of the accused, upon their proper foundations, the criminal annals of England and America furnish scarcely a precedent, where twice the time allotted here was not required and wisely consumed by counsel in the legitimate defence of the accused.

I am, therefore, of opinion that there was error, and that the prisoners are entitled to a *venire de novo.*