An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-866

Filed 6 May 2026

Nash County, No. 22CR050850-630

STATE OF NORTH CAROLINA

v.

OMAR AMANTE GALVAN, Defendant.


Appeal by Defendant from judgment entered 5 March 2024 by Judge Jerry R. Tillet in Nash County Superior Court. Heard in the Court of Appeals 26 February 2026.

> *Attorney General Jeff Jackson, by Assistant Attorney General Brent D. Kiziah, for the State.*
>
> *Ryan Legal Services, PLLC, by Attorney John E. Ryan III, for Defendant–Appellant.*


MURRY, Judge.


Omar A. Galvan (Defendant) appeals his jury convictions for felony cocaine trafficking. He argues that the trial court erred by not inquiring into whether Defendant had reached an "absolute impasse" with his court-appointed counsel regarding a potential plea agreement. For the reasons discussed below, this Court holds that the trial court did not so err.

## I.   Background

On 18 March 2022, law-enforcement officers pulled Defendant over on the side of the highway under suspicion of drug trafficking. The arresting officers found two kilograms of cocaine under his car seat and promptly arrested him. A grand-jury indictment soon followed on 12 September 2022. The trial court appointed counsel for Defendant prior to his March 2024 trial, which proceeded apace without much fanfare. On 5 March 2024, though, defense counsel stated in open court:

> Your Honor, I just want to get it on the record, I had some more discussions with Mr. King last night. . . . I have written out a proposed plea transcript . . . , which would require him . . . [to] plead to two Level I traffickings . . . consolidated for one judgment, so he would be getting 35 to 51 months. . . . [For] whatever reason, he won't listen to any advice I give him. I've added in a sentence that says, "This plea requires that no statement, cooperation, or information in any way is required from the Defendant," so he can feel comfortable that nobody is going to think that he's told on somebody. . . . And if we . . . finish this trial, he is . . . probably going to . . . fac[e] 444 months. I've told him I could probably get him 35 months this morning. He won't listen to me. I just want it on the record that I've done everything I can do to try to limit his exposure.

The trial court acknowledged this recitation "as long as [Defendant] underst[oo]d th[e]" resulting entry to the record. The jury returned guilty verdicts on the trafficking charges later that day, for which the trial court then sentenced Defendant to 175–222 months of incarceration. Defendant timely appealed.

## II.   Jurisdiction

This Court has jurisdiction over Defendant's appeal from the trial court's final judgment under N.C.G.S. §§ 7A-27, 15A-1444. *See* N.C.G.S. § 7A-27(b) (2025) (final

judgment of a trial court); *id.* § 15A-1444(a) (pleaded not guilty but found guilty).

## III.    Analysis

On appeal, Defendant argues that the trial court erred by failing to recognize his "absolute impasse" with court-appointed counsel regarding the proposed plea deal. He suggests that their "relationship deteriorated to the point" of requiring a statutory inquiry of the counsel's constitutional effectiveness. Having reviewed this question of law *de novo*, we disagree. *See State v. Hutchins*, 303 N.C. 321, 343 (1981).

Both our State and Federal Constitutions guarantee an indigent defendant's right to assistance of counsel in a felony criminal trial. *See State v. Collins*, 70 N.C. 241, 244 (1874) (citing N.C. Const. of 1868, art. I, § 11, *ratified as* N.C. Const. art. I, § 23)); *Gideon v. Wainwright*, 372 U.S. 335, 342–45 (1963) (incorporating Sixth Amendment's Assistance of Counsel Clause to States). These protections include the right to *effective* assistance of counsel subject to the "normal ineffectiveness standard." *State v. McDowell*, 329 N.C. 363, 387 (1991) (first citing *Strickland v. Washington*, 466 U.S. 668 (1984) (federal standard); and then citing *State v. Braswell*, 312 N.C. 553 (1985) (state standard)). But they "are not absolute." *Hutchins*, 303 N.C. at 341. Although the relevant Clauses do not afford a defendant "the right to have counsel *of his choice* appointed to represent him," *State v. Thacker*, 301 N.C. 348, 351–52 (1980), that counsel must still defer when they "reach an absolute impasse as to . . . tactical decisions" amidst a trial, *State v. Ali*, 329 N.C. 394, 404 (1991). "In such situations, . . . defense counsel should make a record of the circumstances, h[is]

advice to the defendant, the reasons for the advice, the defendant's decision and the conclusion reached." *Id.* As shown in *State v. McDowell*, this sort of affirmative deference does not implicate the " 'absolute impasse' rule." *State v. Holliday*, 289 N.C. App. 667, 674 (2023) (citing *Ali*, 329 N.C. at 404).

In *McDowell*, the defendant appealed his murder conviction in relevant part for the trial court's alleged failure to "requir[e] defense counsel to exercise judgment independent of [his] decision in jury selection." *McDowell*, 329 N.C. at 380. During the selection process, his defense counsel "passed" a particular juror at the defendant's insistence. *Id.* at 381. The counsel acknowledged his own "right to simply make that decision" but still "defere[d] to his client's wishes in making th[e] tactical decision to pass [that] juror." *Id.* In rejecting the defendant's claim, the Supreme Court held that the counsel "did not relinquish his authority as 'attorney' in doing so. *Id.* It reasoned that a "defense counsel['s] . . . deference to his client's wishes" did not create a "conflict as to whether to pass or strike the[ ] jurors." *Id.* at 380. And although certain "[t]actical decisions at trial" may be "generally left to attorney discretion," the "right[s] to testify and plead" are not among them. *Id.*

Here, Defendant's counsel "wr[ote] out a proposed plea" agreement that "would . . . consolidate[ ] for one judgment" a lesser sentence than Defendant ultimately received. The counsel confirmed his "discussion" of the proposal with Defendant. Afraid of a possible jailhouse-snitch reputation, though, Defendant rejected this deal and "wo[uld]n't listen to" any contrary argument. In effect, he reaffirmed his "right

to . . . plead" not guilty in open court. *Id.* And in response, defense counsel "want[ed] it on the record" that he had "done everything [he] c[ould] . . . to try to limit [Defendant's] exposure." In doing so, he soundly "recorded the circumstances, his advice to Defendant, the reasons for the advice, Defendant's decision, and the conclusion reached." *Ali*, 329 N.C. at 404 (citation modified). This "accord[s] with the principal–agent nature of the attorney–client relationship" and does not "reach an absolute impasse" that would otherwise implicate constitutional ineffectiveness. *Id.* Thus, we hold that the trial court did not err by forgoing an inquiry into Defendant's satisfaction with his court-appointed counsel.

## IV.  Conclusion

For the reasons discussed above, this Court holds that the trial court did not err by forgoing an inquiry into whether Defendant had reached an "absolute impasse" with his court-appointed counsel.


NO ERROR.

Judges HAMPSON and WOOD concur.

Report per Rule 30(e).