Eunice BYRTH, Appellant,

v.

UNITED STATES of America, Appellee.

No. 17387.

United States Court of Appeals Eighth Circuit.

Feb. 17, 1964.

James Bell, St. Louis, Mo., for appellant.

Richard D. FitzGibbon, Jr., U. S. Atty., and William C. Martin, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before VAN OOSTERHOUT, MATTHES and MEHAFFY, Circuit Judges.

MEHAFFY, Circuit Judge.

Defendant Eunice Byrth has appealed his conviction by the United States District Court, sitting without a jury, for the possession and sale of narcotics in violation of 21 U.S.C.A. § 174 and 26 U.S.C.A. § 4705(a). The defendant maintains that deficiencies in the Government's circumstantial evidence precluded the trial court from finding beyond every reasonable hypothesis that the defendant was the source from which an informer working for Federal Narcotics Agents allegedly purchased narcotics.

Viewing the evidence most favorable to the prevailing party, the record of trial indicates that on the evening of May 7, 1962, agents of the Federal Bureau of Narcotics met one Frederic Ray, a narcotic addict, on the street in St. Louis, Missouri. Ray, a former convict and friend of the defendant since they had met while both served sentences together in prison, had volunteered to act as an informer for the agents and attempt to arrange a narcotics sale from defendant, a suspected drug peddler. Agent Jimmie Snokhous testified that in the presence of Agents Edward Demorest and James Parker, he searched Ray, who was seated in a government vehicle's back seat, by examining his pockets, feeling around his waistline, under his armpits, around his ankles, over his shoes, and generally over most of his body. Snokhous found no money or narcotics on Ray's person. Following the search, Agent Demorest accompanied Ray to a nearby telephone booth where the latter placed a call. Demorest's testimony concerning the identity of the party with whom Ray conversed was ruled inadmissible by the trial court. The three agents and Ray then drove to another location, at which time Agents Parker and Snokhous left Demorest and Ray in the government sedan to travel in a special government, panel truck which would take them to the scene of Ray's rendezvous with defendant and provide Snokhous with a hidden vantage point for surveillance of the anticipated purchase of narcotics.

Meanwhile, Agent Demorest drove Ray to the northeast corner of Labadie and Prairie Avenue near Ray's home at 3822 Labadie, the intended meeting place with defendant. There, Demorest performed a second, but more detailed, search of Ray without requiring him to strip, but who was coatless at the time. Demorest inspected Ray's hat and hatband, felt and looked around his shirt collar, sleeves, arms, armpits, chest and body area, trousers' waistband and pants legs including his stockings and around the inside of the tops of his shoes which were not removed. Again finding no narcotics or money in Ray's possession, except some silver coins, Demorest gave Ray $100.00 in bills of small denominations from official funds before Ray departed the vehicle about 8:00 p. m. and proceeded walking west on the south side of Labadie Avenue towards his house approximately eighty-five yards away. Demorest observed Ray until he reached his yard and turned left into the walkway leading to the front steps of his house.

Agent Snokhous was by this time stationed out of sight at a louvered aperture in the closed panel area of the government truck parked on the north side of Labadie about fifty-five feet directly across from Ray's house. He picked Ray up in his observation walking from the east on Labadie and also saw him turn into his yard and sit down on the steps. Keeping Ray in continuous view, Snokhous testified that the defendant arrived approximately one hour later about 9:30 p. m. by taxi and sat down alongside Ray who had been waiting there since his arrival. Although it was after dark, Snokhous' view was aided by an electric street lamp on his side of the street and the utilization of illuminated binoculars.

According to Snokhous' undisputed testimony, the defendant handed Ray a small, dull colored object; while momentarily thereafter, Ray handed defendant an object, both of which the witness could not identify. Snokhous watched Ray and defendant then walk west on Labadie together for about seventy-five yards, whereupon they separated, and Ray returned to his former seat on the front steps of his house. Snokhous continued to observe Ray who, about twenty minutes later, proceeded to walk east on Labadie towards the intersection with Prairie Avenue where Agent Demorest awaited his return. Although Ray passed from Snokhous' line of sight, Demorest stated that he first saw Ray approaching at 9:45 p. m. walking east on Labadie about two-thirds of the distance from where he was parked at the intersection to Ray's house. Ray came directly to Demorest and handed him a

brown, manila, envelope which, upon immediate examination by Demorest, was found to contain a quantity of white powder. Demorest performed another search of Ray, similar to his previous one, finding no other narcotics nor the $100.00 which he had earlier entrusted to him.

Snokhous testified that during his surveillance of Ray's activities, he came in contact with no one other than defendant. Demorest added that he observed Ray contact no one during his walk from the vehicle to his house and while observed en route returning to the agent's vehicle. Both of these witnesses stated that at no time during their observation of Ray did he give the appearance of picking up an object from the ground near his shoes.

Agents Snokhous and Demorest further testified the envelope and its white powder contents were subsequently forwarded to the United States Chemist with the Alcohol and Tobacco Tax Division at Omaha, Nebraska, for analysis. The United States Chemist testified that the white powder contained ten per cent heroin hydrochloride, a narcotic. There was no break in the custody of the narcotics from the time the informer made delivery to the agents until it was analyzed by the chemist and later introduced into evidence at the trial.

The only evidence presented by the defense was defendant's testimony in his own behalf. He denied any sale of narcotics to Frederic Ray on May 7, 1962, or any other date, but on the day of trial, April 3, 1963, he was unable to recollect his activities on the alleged date of the crime. The defendant remembered Ray visiting him several times at his house during the summer of 1962 and acknowledged that he could have visited Ray at his residence on Labadie during that same period. Defendant admitted he had one prior conviction for the possession of marijuana while formerly an addict, but insisted he had never sold narcotics to anyone.

The Government was unable to produce the informer, Frederic Ray, at the trial.

Defendant contends that the surveilling agents' testimony (1) regarding the alleged incomplete search of the informer's entire body and clothing prior to his stakeout failed to exclude the reasonable hypothesis that the narcotics were secreted on his person and (2) indicates their observation of the informer was not continual during the events on the date in question so as to exclude the equally reasonable hypothesis that the informer acquired the narcotics from his own person or a hidden stash in the vicinity of his house and not from the defendant.

■ Ordinarily, to obtain a criminal conviction, the Government bears the burden of proving only that the defendant is guilty beyond a reasonable doubt. However, this Court has recognized the well entrenched principle that in a criminal prosecution where the evidence is wholly circumstantial, the proof must exclude every reasonable hypothesis except the accused's guilt, for a conviction to stand. Ruffin v. United States, 312 F.2d 232 (8th Cir. 1963), cert. denied 373 U.S. 942, 83 S.Ct. 1551, 10 L.Ed.2d 698 (1963); Tri-Angle Club, Inc. v. United States, 265 F.2d 829 (8th Cir. 1959); Finnegan v. United States, 204 F.2d 105 (8th Cir. 1953).

■ For conviction under the instant indictment, the Government had to establish, whether by direct and/or circumstantial evidence, the facts of defendant's possession and sale of narcotics to the informer on the evening of May 7, 1962. The applicable degree of proof required of these disputed facts depended, in turn, upon whether the evidence presented by the prosecution was wholly circumstantial or not. This evidence consisted in testimony of the two surveilling agents, Demorest and Snokhous. Their testimony represented circumstantial evidence in that it tended to prove the aforementioned disputed facts by proof of other facts which lead the mind to conclude that the facts existed which were sought to be established. Rumely v. United States, 293 F. 532 (2nd Cir.

1923), cert. denied 263 U.S. 713, 44 S.Ct. 38, 68 L.Ed. 520 (1923). That is to say, proof that the informer had on his person no narcotics or money, except that furnished him by the agent, before coming in contact with the defendant, that he was continually observed to have come into contact with no other party or repository prior, during, and after his exchange of unidentifiable objects with the defendant, and that, thereafter, he turned over to the agent a substance later proven to contain narcotics having in the interim disposed of the money supplied, excludes every reasonable hypothesis except the inference from the circumstantial evidence that defendant possessed and sold these narcotics to the informer.

■ For such an ultimate inference to be valid, it must be based upon proven facts as one inference cannot be founded upon another to sustain findings proven by circumstantial evidence. Wesson v. United States, 172 F.2d 931 (8th Cir. 1949). Therefore, the direct evidence, concerning the thoroughness of the informer's preparatory search and his continued observation during his mission, the facts from which the inference of guilt is drawn, must have been legally sufficient to establish their proof.

Before embarking upon his assignment, the informer's person and clothing were twice searched from head to foot by Agents Snokhous and Demorest. These inspections were exceedingly more meticulous than the single cursory search of only an informer's coat, vest, and trouser pockets found by the court in Fletcher v. United States, 81 U.S.App. D.C. 306, 158 F.2d 321, 322 (D.C.Cir. 1946), to have been "little more than a farce". The searches performed by Agents Demorest and Snokhous are more comparable to that described in Young v. United States, 297 F.2d 593, 594–595 (9th Cir. 1962), wherein the court ruled:

"There is no merit in appellant's * * * contention that the search of the informer's person prior to his purchase of the narcotics was inadequate. He testified:

"'I took off my Army jacket * *- [the narcotics agent] went through. it, and he went through my billfold,. spread my handkerchief open, examined the contents of my pocket, searched my shoes, socks, ruffled my hair, and he went all the way through me to see that I didn't have anything else on me.'"

Similarly, in Dear Check Quong v. United States, 82 U.S.App.D.C. 8, 160 F.2d 251 (D.C.Cir.1947), the defendant unsuccessfully contended the informer was improperly searched prior to the alleged purchases. There, the evidence showed that the informer's hair, shirt collar, and cuffs, pockets, trouser waistband, belt and shoes, had been examined.

■ The only distinction between the informer's search in the case at bar and those held legally sufficient in the Young and Dear Check Quong cases is that here the search of the informer's shoes did not include removal. Nevertheless, we deem the search adequate in view of the surveilling agents' testimony that the informer, while observed, picked up nothing from the ground nor gave the appearance of removing anything from his shoes which would exclude the hypothesis he obtained the narcotics he produced from his own shoes.

Thus, all that remains is the question of the continuity of the agents' observation of the informer's activities from departure until return in order to sustain proof of the above facts, while at the same time eliminating the remaining hypothesis that the informer could have obtained the narcotics from a hidden. stash in the vicinity of his house. Agent Demorest stated that after dispatching Ray with his last minute instructions, he kept him under view until he turned into the yard of his house. Agent Snokhous, stationed across the street from Ray's house in the government truck, spotted Ray prior to this and continued to observe his activities throughout his meeting with defendant and until Ray reached a point beyond Snokhous' scope of view

from the truck while en route east on Labadie in return to the government vehicle driven by Demorest. Demorest sighted Ray returning approximately two-thirds of the eighty-five yard distance from the intersection to his house and continuously followed him back to the automobile. Therefore, before Ray left the view of Snokhous, he undoubtedly came within the sight of Demorest as the two agents' scopes of observation were overlapping. The evidence satisfies proof of the fact that the informer's movements were continuously observed justifying the conclusion the narcotics were not obtained from a hidden stash.[1]

Having reviewed the entire record of evidence which confirms the finding all reasonable hypotheses except defendant's guilt were excludable, we are compelled to sustain the district court's judgment of conviction.

Affirmed.

---

**1.** See Young v. United States, supra, wherein the defendant's conviction for unlawful sale of narcotics was upheld upon circumstantial evidence despite the fact the surveilling agents only observed the informer and defendant both enter and exit an apartment building where the latter resided, but did not witness the actual transfer which occurred inside.