**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Robert James GARRETT, Thomas Earl
Simmons and William Earl Andrews,
Defendants-Appellants.**

**No. 15223–24–25.**

United States Court of Appeals
Seventh Circuit.

Dec. 7, 1966.

Rehearing Denied Jan. 23, 1967.

**297**

Phillip H. Ginsberg, George E. Bullwinkel, Raymond J. Smith, Doris A. Coonrod, Chicago, Ill., for appellants.

Edward V. Hanrahan, U. S. Atty., George E. Faber, Asst. U. S. Atty., Chicago, Ill., for appellee. John Peter Lulinski, Asst. U. S. Atty., of counsel.

Before HASTINGS, Chief Judge, DUFFY, Senior Circuit Judge, and SCHNACKENBERG, Circuit Judge.

SCHNACKENBERG, Circuit Judge.

Defendants, Robert James Garrett, William Earl Andrews and Thomas Earl Simmons, severally appeal from judgments entered by the district court, on April 6, 1965, based upon a trial by jury, convicting them of robbery on February 27, 1964 of a savings and loan association whose accounts were insured by the Federal Savings and Loan Insurance Corporation, in violation of Title 18 U.S.C. § 2113, said defendants then being armed with dangerous weapons, to-wit, firearms, as charged in an indictment filed March 3, 1964.

It appeared from evidence introduced out of the jury's presence on defendant Garrett's motion to suppress that during the afternoon of February 27, 1964, six men forced their way into the home of Mrs. Mahon, the mother of defendant Andrews, and after ransacking the house without permission, they suddenly left without taking anything. Thereafter, at about 6:30 P.M. FBI agents Huntington and Quinlan came to that house without a warrant and went to the basement

where they saw two suitcases in which money wrappers and other incriminating evidence were found. The men took one of the suitcases with them. While they were in the house they "looked and searched everything". On cross-examination Mrs. Mahon testified that the men took both suitcases, which were not owned by her, and in fact she did not know how they got there, because she did not give anybody permission to put them there.

Mrs. Mahon further testified that, when these agents said there was something in the basement that they wanted, she did not know that a suitcase was there, so they went down and she followed. She testified that she did not on that day give anybody permission to put the suitcases in her house, specifically a brownish suitcase (Government's Group Exhibit No. 4). Her answer was the same as to another suitcase marked Government Group Exhibit No. 3.

She also testified that Andrews was not in her home that day.

At the hearing on said motion, Garrett testified in substance that a suitcase (the one marked Government's Group Exhibit No. 4) *belonging to him* was removed from the home of Mrs. Mahon on February 27, 1964 and that he (Garrett) did not consent to said removal.

1. Garrett charges that the district court thereafter erred in admitting *in the presence of the jury* a reading by the court reporter of the testimony of Garrett in support of his motion for suppression of the evidence seized without a warrant.

In the course of his reasoning Garrett's counsel urges upon us that

"To protect his Fourth Amendment rights against unreasonable search and seizure, defendant [Garrett] was obliged to take the stand and assert ownership in one of the suitcases seized by the F.B.I. agents without a warrant. In order that the defendant Garrett have the proper standing to make the objection, it was essential that he so testify. Over objection,

however, the trial court allowed the transcript of Garrett's testimony in support of his motion to be read to the jury, and thus the fatal link identifying him with the suitcase and its contents was established. To thus force the defendant Garrett to barter away his rights against self-incrimination in return for the opportunity to assert his Fourth Amendment rights is a violation not only of the right against self-incrimination, but of the right to due process itself."

■ His counsel contends that, in deciding to testify for the purpose of establishing Garrett's ownership of the suitcase, at the risk of having that testimony used against him upon the issue of guilt, he was required to and did resolve a dilemma. However, counsel has shown no dilemma, because he never has shown that there was no other way for him to prove Garrett's ownership of the suitcase. It is a matter of common knowledge that the fact of ownership of such an object as a suitcase might be proved in numerous ways, viz: testimony or documentary evidence of a purchase thereof by the alleged owner, open possession and the use thereof by him or other circumstances so commonplace as to be unnecessary to enumerate. Moreover, the choice of a solution for a dilemma (if we assume that one existed) was for Garrett's attorney, and he made a decision. He was confronted with an indictment charging Garrett with a criminal offense. Even if there were no other evidence of ownership available, Garrett voluntarily testified in support of his motion to suppress and he could not thereafter rely on the fifth amendment to bar consideration by the trier of facts of that testimony, if relevant (which it was), in the trial of the criminal charge against him.

■ Faced with an indictment charging him with a criminal offense, defendant Garrett was entitled to, and had, a trial by jury. But, although defense counsel had the usual problem of whether to call defendant as a witness to prove

ownership on the motion to suppress, it does not follow from the fact that defendant did testify that what he then said was improperly submitted to the trial jury on the issue of his alleged guilt. It was certainly relevant. The testimony was voluntary and given under the guidance of his own counsel. To hold otherwise, we would in effect be attempting to create a "judicial amendment" to the constitution to protect persons from the risks of errors of judgment in trial tactics. That is neither our office nor our inclination. We hold that no error occurred in the district court in respect to this matter.

To the same effect is the result reached in Heller v. United States, 7 Cir., 57 F. 2d 627 (1932), at 629, cert. denied 286 U.S. 567, 52 S.Ct. 647, 76 L.Ed. 1298.

Our decision is not contrary to the holding in Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), cited by defendant.

2. Defendant Garrett contends that his suitcase was "improperly introduced in evidence because (a) the suitcase had not been 'abandoned' by the defendant, (b) it was seized by F.B.I. agents without a warrant, and (c) it was seized without the defendant's permission."

■ We believe that the evidence shows that Mrs. Mahon, in whose basement the suitcase was found, was in possession of Garrett's suitcases and that she consented impliedly to their search and seizure. Cutting v. United States, 9 Cir., 169 F.2d 951, 952, 12 Alaska 143 (1948); United States v. Walker, 2 Cir., 197 F.2d 287, 289 (1952), cert. denied 344 U.S. 877, 73 S.Ct. 172, 97 L.Ed. 679. Agent Huntington testified that "she led the search".

In Marshall v. United States, 9 Cir., 352 F.2d 1013, 1014 (1965), cert. denied 382 U.S. 1010, 86 S.Ct. 618, 15 L.Ed.2d 526, F.B.I. agents obtained the possession of a brief case of defendant left in the possession of his landlady for safekeeping. The court said, 352 F.2d at 1015:

"None of this, however, is meant to mean that a man's briefcase is never secure against unreasonable search and seizure, but when *possession and control of his briefcase is given by a man to another person we think that man accepts the risk that the other person will consent to a search and seizure of it and, under the circumstances that exist in this case, such consent is valid.* * * * (Emphasis supplied.)

While counsel for Garrett cites United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951), we hold that *Jeffers* is distinguishable because it involved the entry of a hotel room of the aunts of defendant therein by officers while the tenants were absent from the premises. In the case at bar a private home was searched while the homeowner was present, gave permission and led the search.

3. Counsel for defendant William Earl Andrews, a son of Mrs. Mahon, in this court emphasizes that the government, in attempting to prove the identity of the robbers of the loan association, produced an employee thereof who saw two men leave after the robbery in a 1960 Thunderbird, which was identified as belonging to a sister of defendant Andrews.

The government evidence against Andrews was that he borrowed his sister's Thunderbird about 11:30 A.M. on the day of the robbery and returned it about 2:30 P.M. of the same day, that a similar car was seen outside the scene of the crime by a teller who ran out after the two robbers. The latter witness testified he saw only two men in the car and that one of them was defendant Simmons. Other eyewitnesses saw the second robber while inside the Association and later identified him as defendant Garrett.

■ We find there is on the record no sufficient evidence to justify conviction of defendant Andrews as an aider and abettor of the alleged robbery.

■ 4. Defendant Simmons, testifying in his own behalf denied that he was at the Association on February 27, 1964. Five Association employees who saw the men who conducted the holdup

pointed out defendant Simmons in the courtroom. It is the contention of defense counsel that all of these witnesses, when identifying Simmons, were able to do so only because they had viewed certain snapshots of him which were in the hands of F.B.I. agents. It is further urged that the snapshots were shown to the witnesses in such manner that Simmons dominated those shown in the group of pictures viewed by these witnesses. However, these government witnesses underwent a cross-examination by defense counsel and we believed the record reveals that the weight to be given the identification testimony of the government witnesses was properly entrusted to the jury. Certainly we are not convinced, in view of the jury's verdict, that the record shows without question that the Association employees were improperly led to identify Simmons as one of the robbers by the showing of these snapshots to the government witnesses who identified Simmons.

Counsel for Simmons also contends that the Jencks Act required the prosecutor to tender to the defense "the pictures along with the statements".

As we said in United States v. Sopher, 7 Cir., 362 F.2d 523 (1966), cert. denied 87 S.Ct. 286, 18 U.S.C.A. § 3500 (e) applies to a written statement made by a witness and signed or otherwise adopted or approved by him, or a recording or transcription thereof.

There is nothing in the Jencks Act which includes a photograph which is not a part of a statement as there defined. To the same effect is Ahlstedt v. United States, 5 Cir., 325 F.2d 257, 259 (1963), cert. denied 377 U.S. 968, 84 S.Ct. 1650, 12 L.Ed.2d 738.

5. A few remaining points raised in briefs of defendants we find lack merit.

As to defendant Andrews, the judgment from which he appealed is reversed.

As to the remaining defendants who have appealed, the judgments of the district court are affirmed.

Affirmed in part and reversed in part.