Bobby McMILLIAN and John William McMillian, Appellants,

v.

UNITED STATES of America, Appellee.

No. 24998.

United States Court of Appeals Fifth Circuit.

Aug. 21, 1968.

Brooks Taylor, Crestview, Fla., S. Gunter Toney, Tallahassee, Fla., for appellants.

Clinton Ashmore, U. S. Atty., Stewart J. Carrouth, Asst. U. S. Atty., Tallahassee, Fla., for appellee.

Before GOLDBERG, GODBOLD and SIMPSON, Circuit Judges.

GODBOLD, Circuit Judge:

Bobby and John William McMillian appeal their convictions for possession of an unregistered distillery, 26 U.S.C.A.

§§ 5601(a) (1) and 5179, carrying on the business of a distiller without the required bond, 26 U.S.C.A. §§ 5601(a) (4) and 5173, and making and fermenting mash, 26 U.S.C.A. §§ 5601(a) (7) and 5222. On a prior appeal their convictions were reversed. McMillian v. United States, 363 F.2d 165 (5th Cir. 1966). In this close circumstantial evidence case we again must reverse.

The McMillians contend the district court erred in admitting statements they made to investigating officers prior to the giving of a *Miranda* warning,[1] and in failing to enter a judgment of acquittal on the ground the circumstantial evidence failed to exclude every reasonable hypothesis other than guilt.[2]

The *Miranda* question arises from statements made by each appellant just prior to the time of his arrest. The investigating officers approached the McMillian home and requested Bobby and John William to come outside. The officers identified themselves and stated their business, which was the investigation of an unregistered distillery located some distance behind the McMillian home. An officer was permitted to testify at trial that Bobby McMillian said "Our land don't go down to the still," and that John McMillian said "I don't know anything about that moonshine still." It appears both statements were voluntary, and neither was the result of questioning. The United States does not dispute that these statements were made prior to the giving of any warning of constitutional rights. After each appellant made his statement, he was arrested and warned of his rights.

■■■ Appellants contend Miranda v. State of Arizona requires exclusion of their statements. We do not agree.[3]

*Miranda* is specifically limited to custodial interrogation. The McMillians were not under arrest when the statements were made. Their freedom of action was not impaired in any significant way. The statements were made within a few feet of their own front porch. *Miranda* does not apply to exclude statements made under such circumstances. Evans v. United States, 377 F.2d 535 (5th Cir. 1967); Archer v. United States, 5 Cir. 1968, 393 F.2d 124 [April 11, 1968].

■■■ The central thrust of the appeal is directed to the sufficiency of the evidence to support the verdict. On appeal from a criminal conviction the evidence must be viewed in a light most favorable to the government. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). The government is entitled to all reasonable inferences from the evidence, but in a circumstantial evidence case the proof must be of such probative force as to lead with reasonable certainty to the inference of guilt, and must do more than create a mere suspicion. Cohen v. United States, 363 F.2d 321 (5th Cir.), cert. denied, 385 U.S. 957, 87 S.Ct. 395, 17 L.Ed.2d 303 (1966); see Vick v. United States, 216 F.2d 228 (5th Cir. 1954). When the government relies on circumstantial evidence to support a conviction the circumstances must not only be consistent with guilt but inconsistent with every reasonable hypothesis of innocence. Barnes v. United States, 341 F.2d 189 (5th Cir. 1965). With these principles in mind we have carefully examined the evidence and conclude the convictions are not supported by substantial evidence and must be reversed.

■■■ The McMillian home is located in a rural area some seven miles west of

---

1. Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. In our view of the case it is not necessary to consider the additional contention that the district court erred in allowing, over timely objection, counsel for the United States to state his personal opinion as to appellant's guilt.

3. Because we hold the statements were not inadmissible under *Miranda* it is unnecessary to consider the application or effect of the Crime Control Act of 1968. Pub.L. No. 90–351, § 701 (June 19, 1968).

DeFuniak Springs, Florida. The house is situated on the south side of State Road 280. It is not clear precisely how far the McMillian property extends into the wooded area to the south of the house, but it appears the McMillians own some such property in addition to the land on which the house and outbuildings are situated.

At approximately 5:30 in the morning federal agents stationed themselves about a quarter of a mile south of the distillery involved here in order to observe the area and prevent any escape of persons who might be operating the still. Other agents were in a position closer to the still site. The uneventful vigil was interrupted when a neighbor of the McMillians, Adkinson, while searching the area for a lost cow, stumbled on the waiting agents. Unknown to the agents at the time, Adkinson had been prosecuted for operating a still located in the vicinity. After engaging Adkinson in conversation for a short time, the agents concluded further observation of the still site would be useless. Proceeding to the site, they found it deserted. The agents discovered three footpaths leading from the still in the general direction of the McMillian house. One path led to a nearby cache where the agents found several bales of Henderson brand sugar.[4] A second path led from the still to an extension of the McMillians' driveway. A third, described as "well-defined," ran for a distance variously estimated at from 100 to 220 yards into the McMillians' back yard.

Following the path leading from the still to the McMillians' back yard, the agents called Bobby McMillian and John William McMillian from the house and arrested them. Two automobiles were parked behind the house. One contained a one-gallon jug of nontax-paid whiskey and had a small quantity of spilled sugar in its trunk. The agents followed tracks made by this automobile in the dew-soaked ground from the parking area, down the driveway extension for a distance of approximately 40 yards to the sugar cache. Two codefendants (who were acquitted) admitted owning the automobile and the jug of whiskey.

A storage shed 30 feet behind the McMillian house contained a number of jugs of the sort commonly used for illegal whiskey. In addition the shed contained sugar bags bearing the Henderson brand name. Bobby McMillian admitted owning the jugs, and testified they were used for hauling water.

In addition to the four defendants the McMillian house contained two children, a teenage boy and John McMillian's wife. Only the four defendants were arrested.[5]

The McMillian house was situated in an area infested with illegal stills. Other than the one at issue in this case[6] it appears there were at least five still sites in the woods surrounding the McMillians' house.

Access to the rear of the house from the public highway was by a driveway which branched off from a narrow dirt road immediately to the west of the house. The road continued into the woods. From this road it was possible to drive to the sugar cache as well as to an area close to the still site. Aerial photographs indicate that within a few yards of the highway the road split, one

---

4. It may be inferred the sugar had recently been placed in the cache. A dew had fallen during the night, and, though unprotected from the elements, the bales were dry. The ground and vegetation around the cache were still damp.

5. The two codefendants who were acquitted were members of the family, but resided in another town and were visiting in the household.

6. Due to the number of stills in the area there was repeated confusion during the trial as to which still the McMillians were being prosecuted for. Undoubtedly this led to much of the conflicting testimony regarding the distance between the still and the McMillian house.

branch intersecting the highway at a point close to the front of the house, the other angling away from the house and intersecting the highway some distance west of the house. There is no evidence that either appellant was ever seen at the still, nor was there evidence that either had done anything in connection with its operation. It is not clear whether the still was located on appellants' property, or even whether they knew of the existence of this particular installation. It is true Bobby McMillian said "Our land don't go down to the still," and that John McMillian said, "I don't know anything about that moonshine still," but it appears the only indication the agents gave as to what still they were investigating was a nod in the direction of the woods to the rear of the house. Because of the numerous stills in the vicinity it cannot be inferred that the McMillians necessarily referred to the still under investigation. See Jehl v. United States, 127 F.2d 585 (9th Cir. 1942).

The strongest evidence connecting the McMillians to the still was the existence of the three paths which joined the house, the driveway and the sugar cache with the still. But each of the paths was easily accessible from the dirt road, which ran from the highway, past the house and into the woods. Mere presence near paths leading to a still is insufficient to support a conviction. United States v. Freeman, 286 F.2d 262 (4th Cir. 1961); Matthews v. United States, 177 F.2d 278 (5th Cir. 1949), cert. denied, 339 U.S. 910, 70 S.Ct. 566, 94 L. Ed. 1337 (1950); Cantrell v. United States, 158 F.2d 517 (5th Cir. 1947). Compare Knight v. United States, 213 F.2d 699 (5th Cir. 1954).

Evidence that the shed behind the house contained jugs, some with small quantities of nontax-paid liquor, and sugar sacks bearing the same brand as the bales found at the cache is likewise insufficient, in the absence of any evidence connecting these items with the operation of the still.

Evidence similar to that involved in this case was held insufficient to sustain the conviction in Sutton v. United States, 131 F.2d 108 (5th Cir. 1942). In *Sutton* a still was located within 450 yards of the appellant's house, and within 300 yards of his barn. Several hundred pounds of sugar and malt were found in the barn. Appellant's son and others who unquestionably were connected with the operation of the still lived in appellant's house and on the night of the raid voices were heard emanating from the house while appellant was inside. However, "it was not proved that appellant owned or controlled the land upon which the distillery was located, nor was there any evidence that he had ever been seen at the still or engaged in any pursuit in connection with it." The evidence was held insufficient. Kendall v. United States, 131 F.2d 431 (5th Cir. 1943), also involving similar evidence, but holding the evidence was sufficient, is distinguishable. In *Kendall* there was evidence the still was located on defendant's land. Trails connected the still with the house. Fresh tracks were traced from the still to a wagon parked in defendant's yard. Sacks of grain were found at the still and in an outhouse, and concealed cans were found on the premises. In the case now before us tracks from an automobile parked behind the house were traced to the sugar cache, and loose sugar was found in the automobile trunk, but the vehicle was owned by codefendants who were acquitted. Thus no inference adverse to appellants may reasonably be drawn from this circumstance.

We have concluded each circumstance relied on by the government to prove guilt is insufficient to support the conviction. We are also of the opinion the circumstances taken as a whole create no more than a suspicion that appellants were connected with this particular still.

Reversed.