**UNITED STATES of America,
Appellee,**

v.

**Herbert Ray JONES, Appellant.**

**No. 19384.**

United States Court of Appeals
Eighth Circuit.

Sept. 24, 1969.

Blackmun, Circuit Judge, dissented.

Murray L. Galinson of Mullin, Galinson, Swirnoff & Weinberg, Minneapolis, Minn., for appellant.

J. Earl Cudd, Asst. U. S. Atty., Minneapolis, Minn., for appellee; Patrick J. Foley, U. S. Atty., Minneapolis, Minn., on the brief.

Before BLACKMUN, LAY and HEANEY, Circuit Judges.

LAY, Circuit Judge.

Defendant was convicted and sentenced for armed robbery of a federally insured bank under 18 U.S.C. § 2113(d).[1] The indictment alleged that while committing this act the defendant assaulted and placed in jeopardy the lives of five persons. The defendant urges several grounds for reversal. We need only discuss the claim of insufficient evidence, which we sustain.

The facts show that on February 21, 1967, the Bank of Minneapolis and Trust Co. was robbed by two armed men at approximately 3:00 p. m. who placed the lives of the bank tellers in jeopardy. These men wore ski masks and were further identified by weight and height. Significant here is the fact that six government witnesses testified that the defendant was not one of the two men who perpetrated the robbery. Defendant was arrested in Kansas City, Missouri, February 22, 1967, on a misdemeanor charge arising from the use of an allegedly expired out state license plate. At the time of his arrest defendant had attempted to purchase another car from Motor City Motors in Kansas City, Missouri, by trading in his 1964 green and white Buick Wildcat, bearing Kansas license plates WY 64853. The Kansas license WY 64853 had been issued to Eddie Jones of Kansas City who was a friend of the defendant's mother. The plates had been discarded by Eddie Jones sometime before the incident in question. Defendant gave the salesman one hundred five-dollar bills as a deposit. According to the salesman, he gave his name as Eddie Jones and said he had won the money in a "crap game" the night before. The serial numbers on fourteen of these bills matched the serial numbers on "bait money" taken from the No. 1 teller cage in the Bank of Minneapolis during the robbery.

At approximately 10:30 a. m. on the morning of the robbery, the defendant and two unidentified men were seen in front of another bank in Minneapolis. All three men were observed "peering" into the bank. According to the defendant he returned to his car while the

1. 18 U.S.C. § 2113(d):
   "Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both."

other two men walked around the corner and were gone approximately ten minutes. A witness testified the defendant himself was one of the men who walked away. This witness thought the men appeared suspicious and copied down their license plate number. Defendant had rented a room for two weeks in Minneapolis on February 20, 1967. The receipt for the room rent shows that the defendant gave a fictitious name. The government also proved the defendant had been unemployed before the robbery in question and had made only two payments on his Buick (one of these in the name of Eddie Jones).

Defendant took the stand and denied any implication or involvement in the robbery. He testified he was a "pool hustler" and used fictitious names wherever he traveled in order to avoid identification. He stated that he had won the money given to the used car salesman by gambling in pool games in Minneapolis. He identified the places he played. He stated he told the car salesman he had won the money gambling and denied that he said he had won it in a "crap game."

There are no other facts or circumstances linking the defendant to the robbery itself. The question is whether the facts proven are sufficient to sustain defendant's conviction of armed robbery by placing lives in jeopardy under § 2113 (d). The government relies upon the inference of theft by reason of the proof of defendant's recent possession of stolen property. The relevant charge of the court is set out below.[2]

2. "Possession of property recently stolen, if not satisfactorily explained, is ordinarily a circumstance from which the jury may reasonably draw the inference and find, in the light of surrounding circumstances shown by the evidence in the case, that the person in possession knew the property had been stolen.

"And possession of property recently stolen, if not satisfactorily explained, is also ordinarily a circumstance from which the jury may reasonably draw the inference and find, in the light of surrounding circumstances shown by the evidence in the case, that the person in possession not only knew it was stolen property, but also participated in some way in the theft of the property.

"Ordinarily, the same inferences may reasonably be drawn from a false explanation of possession of recently-stolen property.

"Whether or not any explanation here is false is for you to determine. I am only stating what the law is.

"The term 'recently' is a relative term. I say 'property recently stolen.' Now, I am defining for you; what do you mean by 'recently stolen'? The term 'recently' is a relative term, and has no fixed meaning. Whether property may be considered as recently stolen depends upon the nature of the property, and all the facts and circumstances shown by the evidence in the case. The longer the period of time since the theft, the more doubtful becomes the inference which may reasonably be drawn from unexplained possession.

"If the jury should find beyond a reasonable doubt from the evidence in the case that the money described in the indictment was stolen, and that, while recently stolen, the property was in the possession of the accused, the jury would ordinarily be justified in drawing from those facts the inference, not only that the money was possessed by the accused with the knowledge that the property was stolen, but also that the accused participated in some way in the theft of the property, unless possession of the recently-stolen property by the accused is explained to the satisfaction of the jury by other facts and circumstances in evidence in the case.

"In considering whether possession of recently-stolen property has been satisfactorily explained, the jury will bear in mind that, in the exercise of constitutional rights, the accused need not take the witness stand and testify. Possession may be satisfactorily explained through other circumstances, other evidence, independent of any testimony of the accused.

"It is the exclusive province of the jury to determine whether the facts and circumstances shown by the evidence in the case warrant any inference which the law permits the jury to draw from possession of recently-stolen property.

"The mere fact that I tell you that possession authorizes you to draw the in-

This court has for many years approved the use of the instruction on possession of recently stolen property as a circumstance to infer participation in the theft. See Ezzard v. United States, 7 F.2d 808 (8 Cir. 1925), and more recently, Anderson v. United States, 406 F.2d 529 (8 Cir. 1969), Sewell v. United States, 406 F.2d 1289 (8 Cir. 1969), Teel v. United States, 407 F.2d 604 (8 Cir. 1969), Pigman v. United States, 407 F.2d 237 (8 Cir. 1969), Burke v. United States, 388 F.2d 286 (8 Cir. 1968), Aron v. United States, 382 F.2d 965 (8 Cir. 1967). Approval of the instruction in federal crimes generally originates in the language in Wilson v. United States, 162 U.S. 613, 619, 16 S.Ct. 895, 40 L.Ed. 1090 (1896), wherein Chief Justice Fuller stated:

> "Possession of the fruits of crime, recently after its commission, justifies the inference that the possession is guilty possession, and, though only *prima facie* evidence of guilt, may be of controlling weight, unless explained by the circumstances or accounted for in some way consistent with innocence."

Since the possession relates to the theft itself, guilt may be inferred for the more aggravated crime associated with the theft, as in *Wilson,* where the defendant was tried for murder. See e. g., Jenkins v. United States, 361 F.2d 615 (10 Cir. 1966) (burglary).

The origin of the rule is somewhat uncertain. Early English cases make liberal reference to it. Reg. v. Cockin, 2 Lew C.C. 235 (1836). The rule was well stated in Reg. v. Exall, 4 F. & F. 922, 926–927 (1866):

> "The law is, that if, recently after the commission of the crime, a person is found in possession of the stolen goods, that person is called up to account for the possession, that is, to give an explanation of it, which is not

unreasonable or improbable. The strength of the presumption, which arises from such possession, is in proportion to the shortness of the interval which has elapsed. If the interval has been only an hour or two, not half a day, the presumption is so strong, that it almost amounts to proof; because the reasonable inference is, that the person must have stolen the property. In the ordinary affairs of life, it is not probable that the person could have got possession of the property in any other way. And juries can only judge of matters, with reference to their knowledge and experience of the ordinary affairs of life."

The rule is discussed as early as 1716 in 2 East's, Pleas of the Crown 656; and in 2 Hale's, Pleas of the Crown 289 (1736). This former authority reads:

> "Wherever the property of one man, which has been taken from him without his consent, is found (recently after the taking) upon another, it is incumbent on that other to prove how he came by it; otherwise the presumption is, that he has taken it feloniously."

The rule is discussed at length in early American cases. See Commonwealth v. Millard, 1 Mass. 6 (1806); State v. Smith, 24 N.C. 402 (1842); Cook v. State, 84 Tenn. 461 (1886); Knickerbocker v. People, 43 N.Y. 177 (1870); State v. Raymond, 46 Conn. 345 (1878). See also the annotation in 101 Am.St. R. 481–524. Today the doctrine receives general acceptance without explication. The rational connection of the inference from the fact proven is universally assumed and is not here questioned. Presently, however, when the instruction utilizes the word "presumption" rather than "inference" it finds a checkered rejection. Cf. Bollenbach v. United

---

ference does not mean that I am instructing you to draw the inference. All I am saying is that you may draw the inference from that possession if you find according to these instructions I have already given.

"Now, if any possession the accused may have had of recently-stolen property is consistent with innocence, the jury should acquit the accused."

States, 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350 (1946); Van Gorder v. United States, 21 F.2d 939 (8 Cir. 1927), and Kasle v. United States, 233 F. 878 (6 Cir. 1916). And see also Payne v. State, 435 P.2d 424 (Okl.Cr. 1967). This court has frequently approved the use of a permissible "inference" to be drawn from possession, but has generally rejected the use of the confusing "presumption." Sewell v. United States, 406 F.2d 1289 (8 Cir. 1969).[3] But this is not the problem here since the trial court instructed only in terms of "inference."

■ Notwithstanding the recognized validity of the inference, early cases and writers reflect guarded circumspection in the use of the doctrine. As said in State v. Smith, 24 N.C. 402, 408–409 (1842):

"But it is obvious that presumptions of this kind, which even in the strongest cases are to be warily drawn, want one of the indispensable premises to warrant them, when the possession, from which a *guilty* taking is inferred, does not shew *a taking or privity in taking* on the part of the possessor.

\* \* \* \* \* \*

[And] unless there be other facts and circumstances to warrant the inference, such a presumption would be rash and irrational."

And in the early but noted work by Wills on Circumstantial Evidence 62–63 (6 Am. ed.1886), the author observed:

"But the rule must be applied with discrimination for the bare possession of stolen property, though recent, uncorroborated by other evidence, is sometimes fallacious and dangerous as a criterion of guilt." [4]

---

3. But see the use of the word "presumption" without mention of "inference" in the recent Rules of Evidence for the United States District Courts and Magistrates § 3–01, pp. 35–39 (Preliminary Draft, March 1969). It would appear this usage assumes that a rebuttable "presumption" of fact is really no different than a permissible inference. Justice Black seemingly agrees. Cf. Bollenbach v. United States, 326 U.S. 607, 616, 66 S.Ct. 402, 90 L.Ed. 350 (1946) (dissenting opinion n. 2). However, Judge Learned Hand has cautioned:
"While we have held a number of times that the jury may find in the accused's unexplained possession of stolen goods enough evidence to convict, we have never intended to indicate that the jury should be directed that it was required by a rule of law to make this inference. In discussions among lawyers and judges of the difference between a permissible inference and a presumption, the terminology may be unimportant. But the jury may be misled by the word 'presumption'; and here it may have interpreted that word as far stronger than a permissible inference." United States v. Sherman, 171 F.2d 619, 624 (2 Cir. 1948).

4. Wills illustrated:
"Sir Matthew Hale lays it down, that 'if a horse be stolen from A., and the same day B. be found upon him, it is a strong presumption that B. stole him; yet,' adds that excellent lawyer, 'I do remember before a learned and very wary judge, in such an instance B. was condemned and executed at Oxford Assizes, and yet within two assizes after, C., being apprehended for another robbery, and convicted, upon his judgment and execution confessed he was the man that stole the horse, and being closely pursued, desired B., a stranger, to walk his horse for him, while he turned aside upon a necessary occasion, and escaped; and B. was apprehended with the horse and died innocently.' A very similar case occurred at the Surrey Summer Assizes, 1827, where a young man was convicted of stealing two oxen. The prisoner, having finished his apprenticeship to a butcher at Monkwearmouth, went to visit an uncle at Portsmouth, from whence he set out to return to London. On the road between Guildford and London, about three o'clock in the morning, he overtook a man riding upon a pony and driving two oxen, who finding that he was going to London, offered him five shillings to drive them for him to London, which he agreed to do, the man engaging to meet him at Westminster Bridge. At Wandsworth he was apprehended by the prosecutor's son, and charged with stealing the oxen. On his apprehension he as-

Before the turn of the century the Tennessee Supreme Court in Cook v. State, 84 Tenn. 461 (1886), quoted from Wharton's Am.Crim.Law saying:

"He further says, that the presumption arising from this fact of possession, standing by itself, *except in cases of receiving stolen goods*, is too slender to support a conviction: Sec. 730.

\* \* \* \* \* \*

"In cases of this kind, where the party is found in possession of stolen property, and the proof shows his possession to have been a guilty possession, slight circumstances may authorize a jury to determine whether he has been guilty of the theft, or of receiving the property, knowing it to have been stolen." 84 Tenn. at 466.

Most modern authorities adopt these early principles by either holding or implying that the inference from recent possession of stolen property must in some way be corroborated by other circumstantial factors as to the crime charged to sustain a finding of sufficiency of evidence. See e. g., Torres v. United States, 270 F.2d 252, 258–259 (9 Cir. 1959); Van Gorder v. United States, 21 F.2d 939 (8 Cir. 1927); Wolf v. United States, 290 F.

738 (2 Cir. 1923). Cf. Burke v. United States, 388 F.2d 286 (8 Cir. 1968); Anderson v. United States, 406 F.2d 529 (8 Cir. 1969); Latham v. United States, 407 F.2d 1 (8 Cir. 1969). And see discussion in Underhill v. State, 70 Okl.Cr. 39, 104 P.2d 447, 449–450 (1940). We reaffirm this principal here.

Defendant, in attacking the sufficiency of the government's evidence, contends that the possession of the bank money and all other evidence supports with *equal* consistency (1) an inference of guilt as to the robbery itself, or (2) an inference of guilt of only possessing property with the knowledge that it was stolen, see 18 U.S.C. § 2113(c).[5] We must assume from the guilty verdict,[6] that the jury did not believe the defendant's explanation of innocent possession. Therefore, the issue is whether the government has sustained its burden of proof as to defendant's guilt of armed robbery where from the circumstantial evidence, it is *as consistent* to infer only guilt of the lesser offense of knowingly possessing and disposing of money taken from a bank under § 2113 (c).

We are not here faced with a record governed by the "lesser included offense" rule. This doctrine permits a jury on the evidence submitted to choose between a greater and lesser offense.[7]

---

sumed a false name, under which he was tried, to conceal his situation from his friends, and convicted, but on a representation of the circumstances he received a pardon, when on the point of being transported for life. He had been the dupe of the real thief, who, finding himself closely pursued, had thus contrived to rid himself of the possession of the cattle." *Id.* at 63.

5. 18 U.S.C. § 2113(c):
"Whoever receives, possesses, conceals, stores, barters, sells, or disposes of, any property or money or other thing of value knowing the same to have been taken from a bank, or a savings and loan association, in violation of subsection (b) of this section shall be subject to the punishment provided by said subsection (b) for the taker."

6. As Judge Mehaffy authoritatively summarized in United States v. Francisco, 410 F.2d 1283, (8 Cir. May 13, 1969):
"In a criminal case where there has been a conviction resulting from a jury verdict of guilty, the appellate court must accept as established all reasonable inferences that tend to support the action of the jury, and any conflicts in the evidence are resolved in favor of the jury verdict. \* \* \*. In determining the sufficiency of the evidence, we must view it most favorably to sustain a jury verdict." *Id.* at 1285.

7. Nor are we concerned with conduct that is similarly prohibited by two statutes, one defining a crime and one a lesser offense. Berra v. United States, 351 U.S. 131, 76 S.Ct. 685, 100 L.Ed. 1013 (1956); cf. Sansone v. United States, 380 U.S.

Rule 31(c) of the Fed.R.Crim.P. provides that "[t]he defendant may be found guilty of an offense necessarily included in the offense charged * *." [8] Here the government attempts to justify the conviction for the aggravated offense on the same evidence that is only equally consistent with guilt of a lesser crime. Yet it is not disputed the offense under § 2113(d) requires proof of distinctive factual elements from that of mere possession proscribed under § 2113(c). There is no contention by the government that additional facts have been proved beyond those necessary to sustain a conviction of the defendant on the lesser offense under § 2113(c). The government's whole case is built upon acceptance of the inference of theft from possession of recently stolen property without consideration that the same circumstance equally supports the inference of the lesser charge of possession of stolen property knowing the same to be stolen. All other corroborative circumstances are as consistent in the proof of one offense as the other. Thus, the jury is actually asked to speculate which crime took place from facts which inferentially *are said to* support both. Where one inference is as consistent as the other, there exists a compelling evidential need for corroboration of the inference charged. See e. g., Hunt v. United States, 115 U.S.App.D.C. 1, 316 F.2d 652 (1963); Baker v. United States, 395 F.2d 368 (8 Cir. 1968); cf. Mercer v. State, 92 Okl.Cr. 37, 219 P.2d 1035 (1950). This corroboration is missing here.[9]

343, 350 n. 6, 85 S.Ct. 1004, 13 L.Ed.2d 882; Sparf v. United States, 156 U.S. 51, 63–64, 15 S.Ct. 273, 39 L.Ed. 343 (1895). Where there exists no distinctive factual element of the greater offense from the lesser a jury cannot choose between the two. As stated in Sansone v. United States, supra:

"A lesser-included offense instruction is only proper where the charged greater offense requires the jury to find *a disputed factual element* which is not required for conviction of the lesser-included offense." (Emphasis ours.)

The principle involved is that to hold otherwise would allow the jury to choose between the two offenses in order to determine punishment, a duty traditionally belonging to the judge. Sparf v. United States, 156 U.S. 51, 63–64, 15 S.Ct. 273, 39 L.Ed. 343 (1895).

8. It is generally recognized that it is impossible to commit a greater offense without having first committed the lesser included crime. Government of Virgin Islands v. Aquino, 378 F.2d 540 (3 Cir. 1967).

9. It is today generally accepted that possession of recently stolen property may create a dual inference: (1) of knowledge that the property was stolen as evidence of receiving and possession of stolen property (see Teel v. United States, 407 F.2d 604 (8 Cir. 1969); Sewell v. United States, 406 F.2d 1289 (8 Cir. 1969); Aron v. United States, 382 F.2d 965 (8 Cir. 1967)) and (2) of participation in the theft itself. Wilson v. United States, 162 U.S. 613, 16 S.Ct. 895, 40 L.Ed. 1090 (1896). See generally Wigmore, Evidence § 2513 (3d ed. 1940).

It would appear that these inferences arose at common law because of the similar characteristics of the crimes of larceny and that of receiving stolen merchandise. As stated in Kasle v. United States, 233 F. 878, 888 (6 Cir. 1916):

"[W]here * * * the statute so defines the act of receiving stolen property and that of stealing it as in effect to make the two offenses the same in character * * * the receipt may amount to larceny, as well as the theft; and so the same presumption arising from recent possession that would be applicable to the thief might also be to the receiver."

Cf. Milner v. United States, 293 F. 590 (5 Cir. 1923). The two inferences brought forth extensive discussion in the early case of Reg. v. Langmead, 10 L.T.R. (N.S.) 351 (1864), where Pollock, C.B., said:

"The distinction between the presumption as to felonious receiving and stealing is not a matter of law. No doubt, upon the evidence, no other person than the prisoner appears distinctly to enter into the transaction, and all that appears is that the prisoner was found very recently in possession of the stolen sheep. That *prima facie* is evidence of stealing rather than of receiving, but in no case can it be said to be exclusively such, unless the party is found so recently in possession of stolen property, and *under such circumstances as to ex-*

It has long been customary (see Wills, at 61 (1881)) that the offenses of larceny or robbery may be charged in the indictment along with the lesser charge of possession or of being a receiver.[10] See Milner v. United States, 293 F. 590, 591 (5 Cir. 1923). Where the evidence, if believed, supports the commission of the greater crime, the jury may so find. On the other hand, the jury may find the defendant guilty only of the lesser charge. See Teel v. United States, 407 F.2d 604 (8 Cir. 1969). And, of course, where the two offenses are charged, the jury must be told that the defendant cannot be guilty of both crimes, since the intent of Congress was not to pyramid multiple punishments for the same acts. Milanovich v. United States, 365 U.S. 551, 81 S. Ct. 728, 5 L.Ed.2d 773 (1961). Nevertheless, these procedural rules cannot allow the jury to speculate as to whether or not the aggravated crime was committed when the inference from the circumstances proven is as consistent with the lesser offense.

This circuit has held in many cases, most recently in United States v. Pope, 415 F.2d 685 (8 Cir. August 27, 1969) and United States v. Francisco, 410 F.2d 1283 (8 Cir. 1969), that a trial court need not instruct in a case based upon

---

clude the probability of receiving. * * *" (Emphasis ours.)

In the same case Judge Blackburn approached the instant problem when he said:

"As a proposition of law there is no presumption that recent possession points more to stealing than receiving. If a party is in possession of stolen property recently after the stealing, it lies on him to give an account of his possession, and if he fails to account for it satisfactorily, he is reasonably presumed to have come by it dishonestly; *but it depends on the surrounding circumstances whether he is guilty of receiving or stealing.* Whenever the circumstances are such as render it more likely that he did not steal the property, the presumption is that he received it." (Emphasis ours.)

However, the substantive difference between the crimes of robbery and receipt later caused Judge Pollock in Reg. v. Exall, 4 F. & F. 922, 925, to say:

"[S]trictly speaking, the possession, is evidence either of the robbery or of the receipt knowing of the robbery, and therefore is not of itself sufficient proof of the robbery as to warrant an inference therefrom."

And in a footnote in the same case, he added:

"And though this is of little consequence in cases of mere larceny * * * it becomes of greater importance in proportion to the gravity of the crime which accompanied the robbery."

Wills, the early commentator on circumstantial evidence observed:

"The recent possession of stolen property may sometimes be referable not to the crime of theft, but to that of having received it with a guilty knowledge of its having been stolen. * * * *The difficulty of referring the act of possession specifically to one of those crimes frequently led to the failure of justice * * *"* (Emphasis ours.) Wills on Circumstantial Evidence 60–61 (6th Am.ed. 1881).

10. When larceny and the crime of receiving are considered to be in the same class and involve equal punishment (under the "Bank Robbery Act" the crime of "taking and carrying away" under § 2113(b) and the crime of "receiving" under § 2113(c) **are** both punishable by the same term of years) it is understandable why the two inferences survived without further difficulty. There could be no prejudice to a defendant from punishment or conviction for one crime or the other. Thus it was stated in Cook v. State, 84 Tenn. 461 (1886) quoting from another Nineteenth Century source, Burrell on Evidence:

" 'The recent possession of stolen property may sometime be referable, not to the crime of theft, but to another, though kindred offense, that of having received the property with a guilty knowledge of its having been stolen. And in the opinion of an able writer, there can be little doubt that persons have been frequently convicted and punished for the former offense whose guilt consisted in the latter.' " Id. at 464–465.

We are not faced with a charge of simple larceny here. The indictment alleges a crime of much graver consequence, of armed robbery by placing lives in jeopardy. This offense carries a punishment of 25

circumstantial evidence that the government must exclude every reasonable hypothesis but that of guilt. This rule, of course, follows Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954). However, there exists considerable support and logic that *Holland* did not change the test to be applied by a district court or this court in considering the legal sufficiency of evidence, be it circumstantial or direct. As the Fifth Circuit observed in Riggs v. United States, 280 F.2d 949, 955 (5 Cir. 1960):

> "The Government insists that the legal principle announced in the cases just cited has been rejected by the Supreme Court in the case of Holland v. United States, 1954, 348 U.S. 121, 139–140, 75 S.Ct. 127, 99 L.Ed. 150. However, this Court has ruled to the contrary in a case decided since the present case was argued and submitted. Cuthbert and Busby v. United States, 5 Cir., 1960, 278 F.2d 220. It was there pointed out that nothing said in the *Holland* case, or in the authorities cited in that case, is at all inconsistent with the test to be applied in circumstantial evidence cases on motion for judgment of acquittal and on review of the denial of such motion as to whether the inferences reasonably to be drawn from the evidence were not only consistent with guilt of the accused but inconsistent with every reasonable hypothesis of his innocence."

See also Barnes v. United States, 341 F.2d 189 (5 Cir. 1965); McMillian v. United States, 399 F.2d 478 (5 Cir. 1968); Whaley v. United States, 362 F.2d 938 (9 Cir. 1966); Woxberg v. United States, 329 F.2d 284 (9 Cir. 1964), cert. den. 379 U.S. 823, 85 S.Ct. 45, 13 L.Ed.2d 33. As the Fifth Circuit recently announced in Harper v. United States, 405 F.2d 185, 186 (5 Cir. 1969):

> "In circumstantial evidence cases, such as this, ' * * * the test to be applied on motion for judgment of acquittal and on review of denial of such motion is not simply whether in the opinion of the trial judge or the appellate court the evidence fails to exclude every reasonable hypothesis, but that of guilt, but rather whether the jury might reasonably so conclude.' Vick v. United States, 5th Cir. 1954, 216 F.2d 228."

This circuit, long after *Holland*, has applied this test in weighing the legal sufficiency of circumstantial evidence. See e. g., Byrth v. United States, 327 F.2d 917 (8 Cir. 1964), where a panel of judges composed of Judge Van Oosterhout (now Chief Judge), Judge Matthes and Judge Mehaffy said:

> "Ordinarily, to obtain a criminal conviction, the Government bears the burden of proving only that the defendant is guilty beyond a reasonable doubt. However, this Court has recognized the well entrenched principle that in a criminal prosecution where the evidence is wholly circumstantial, the proof must exclude every reasonable hypothesis except the accused's guilt, for a conviction to stand." *Id.* at 919.

See also Wood v. United States, 361 F. 2d 802, 805 (8 Cir. 1966), where this court compares the instruction with "the standard we have applied in testing the sufficiency of the evidence."

Notwithstanding the *Holland* rule, the principles relied on here are certainly still applicable to criminal cases. Where the government's evidence is equally as strong to infer innocence of the crime charged, as it is to infer guilt, we are not dealing in the realm of credibility, but legal sufficiency and a court has the duty to direct an acquittal. As

years. Nor is it material here that the defendant received less than the maximum a 12-year sentence. The punishment of

wrongful possession under § 2113(c) is 10 years.

Judge Van Oosterhout recently stated in Lerma v. United States, 387 F.2d 187, 188 (8 Cir. 1968):

"The court properly instructed the jury on the circumstantial evidence, including therein the following: 'If, however, circumstances to be considered in determining defendant's guilt are just as consistent with innocence as guilt, then the verdict must be one of not guilty.' See Byrth v. United States, 8 Cir., 327 F.2d 917, 919; Sykes v. United States, 8 Cir., 312 F.2d 232, 235."

In any event, under any standard, we hold there exists no substantial evidence to sustain proof that the defendant here was guilty of the crime charged beyond a reasonable doubt.

■ In the instant case, no fact or circumstance proves that defendant participated in the actual robbery or acted as an accessory by aiding and abetting, other than his recent possession of the stolen money. Defendant's presence in Minneapolis, his association with other unidentified men, his use of fictitious names, or of illegal license plates, do not connect him with the robbery itself. These facts are as relevant to the crime charged as they are to the lesser offense of illegal possession. Moreover, in the instant case the government *has proven by six witnesses that the defendant did not engage in the actual robbery itself*. The government relies upon the argument that an aider and abettor is as guilty as the principal. See Nassif v. United States, 370 F.2d 147 (8 Cir. 1966); Latham v. United States, 407 F.2d 1 (8 Cir. 1969); Pigman v. United States, 407 F.2d 237 (8 Cir. 1969). The difficulty with this argument is threefold: (1) there is no fact which in any way connects defendant with any act of participation in the robbery itself, (2) there is no evidence that *anyone in any way* aided

or abetted the two identified men involved in the robbery and (3) there is no corroborative circumstance beyond possession of the bills which in any way ties the defendant to the crime itself. The crime of aiding and abetting under 18 U.S.C. § 2 requires more than a bare suspicion that one participated in the robbery. Nye & Nissen v. United States, 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919 (1949); Baker v. United States, 395 F.2d 368 (8 Cir. 1968); Johnson v. United States, 195 F.2d 673 (8 Cir. 1952); cf. United States v. Cappabianca, 398 F.2d 356 (2 Cir. 1968); United States v. Garrett, 371 F.2d 296 (7 Cir. 1966); Goodwin v. United States, 121 U.S.App.D.C. 9, 347 F.2d 793 (1965); Cooper v. United States, 94 U.S.App.D.C. 343, 218 F.2d 39 (1954).

In the instant case the government's proof negatives the inference of defendant's actual participation in the robbery itself. Under the circumstances the inference of guilt supports as consistently the lesser offense of receiving and possessing stolen goods with knowledge of their being stolen. We hold the government has failed to sustain a charge of aiding and abetting in the more aggravated offense of armed robbery under § 2113(d). If a defendant's guilt of an aggravated crime is as inferentially consistent with a lesser offense, the inference of his guilt of the aggravated offense is as consistent with his innocence to that offense.

■ Although the evidence is insufficient to convict the defendant of the crime charged, there is substantial evidence to sustain defendant's guilt of the lesser offense under § 2113(c). However, defendant was not charged with violation of this separately defined offense. Prosecution of the defendant under § 2113(c) is still available to the government to pursue if it chooses.[12]

---

12. This court has given consideration to a remand for a new trial under § 2113(c) under the present indictment. For purposes of punishment, the offenses under (c) and (d) must be considered merged as to the same offense. Heflin v. United States, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1969). And see Hunt v.

Reversed and remanded with directions to enter a judgment of acquittal.

BLACKMUN, Circuit Judge (dissenting).

For me, on the sufficiency of the evidence issue, this is only a simple and routine case, hardly deserving of great scholastic labor with historical references and cases from past centuries.

I must concede that the prosecution's case is a comparatively thin one. I must also concede that, in hindsight and in the light of what developed at the trial, the United States Attorney might have been better advised to prosecute Jones under 18 U.S.C. § 2113(c) rather than under § 2113(a) and (d). But, even with these concessions, I. cannot agree that, as a matter of law, this bank robbery conviction must be nullified and the defendant acquitted on the ground that the evidence is insufficient.

It seems to me that if, as Judge Lay argues, the inference permissible from the possession of marked currency stolen only the day before from the victimized bank required corroboration (a conclusion in which I am not yet entirely willing to participate), that corroboration is definitely present in the aggregate of facts, taking, of course, as I feel the majority fail to do, the evidence in the light favorable to the government as the prevailing party. United States v. Lodwick, 410 F.2d 1202, 1204 (8 Cir. 1969). The facts thus measured are: (1) Jones' arrival in Minneapolis shortly before the robbery (at one point he testified it was 11 p. m. on February 10; at another he said it was 5 or 6 a. m. on February 20). (2) His possessing and using a Kansas license plate to which he was not entitled. (3) His renting an apartment that very morning and doing so under a fictitious name. (4) His being accompanied, in that rental, by two other Negroes, one of whom was tall. (5) His further association with two other Negroes, one of whom was tall, that same morning and their joint and suspicious peering into a bank in downtown Minneapolis. (6) The departure of Jones and one of those men in the direction of the victimized bank, leaving the other man in the car, and their return to Jones' automobile. (7) The actions of the three being strange and unusual enough to prompt a stranger in an adjacent parked car to take the trouble to write down their license number. (8) The 3 p. m. robbery of the bank by two Negroes, one of whom was tall, with lives of persons placed in jeopardy by the use of weapons. (9) Jones' unemployment for 3½ months preceding the robbery and his failure to make required payments upon his automobile. (10) His sudden affluence coincidental with the robbery. (11) His departure from Minneapolis and Minnesota within a few hours of the robbery to return to Kansas City

United States, 15 U.S.App.D.C. 1, 316 F.2d 652 (1963). We are not satisfied, however, that the charge of armed robbery includes the offense of receiving and possessing stolen property for purpose of indictment under § 2113(d). See Heflin v. United States, supra, 358 U.S. at 419, 79 S.Ct. at 454, where Mr. Justice Douglas said: " * * * in view of the legislative history of subsection (c) we think Congress was trying to reach a new group of wrongdoers, not to multiply the offense of the bank robbers themselves." (Emphasis ours.) Cf. Hill v. United States, 306 F.2d 245 (9 Cir. 1962). But cf. Dove v. Peyton, 343 F.2d 210 (4 Cir. 1965) (under Virginia law the crime of receipt merges with robbery and larceny).

If there were indication of the availability of additional evidence, this court has the authority under 28 U.S.C. § 2106 to remand for a new trial even under the offense charged. Bryan v. United States, 338 U.S. 552, 70 S.Ct. 317, 94 L.Ed. 335 (1950). However, we are satisfied that justice will be better served to have the government proceed anew under § 2113(c). The statute of limitations has not barred such prosecution, nor is such charge subject to the defense of double jeopardy. Cf. Orlando v. United States, 377 F.2d 667 (9 Cir. 1967), dismissed at the request of the government, 387 F.2d 348 (9 Cir. 1967).

on an all night drive in midwinter, despite the presence of several days yet to run on his apartment lease. (12) His rush the very next afternoon to trade in his automobile and upgrade his transportation from a 1964 Buick to a 1965 Lincoln. (13) The inconsistency in his explanations as to how he acquired the marked bills. (14) His testimony that he had $350 when he left Kansas City and hustled $100 in Minneapolis on February 20 and $250 on February 21, as contrasted with his handing salesman Grimes $500 in five dollar bills, among which were marked ones.

It seems to me that the listing of these factors discloses that it is a mistaken analysis to conclude that the facts proved by the government tend no more than equally to show a violation of § 2113(c) and a violation of § 2113(a) and (d). Instead, they tend to show more than the mere possession of money knowingly stolen from a bank, which is all that § 2113(c) requires. They tend to show aiding and abetting the armed robbery of that bank by the two other men. For me, therefore, the submission to the jury of the issue of a violation of § 2113(a) and (d) was fully justified by the evidence.

In passing, I might also say that I am disturbed by the majority's seeming circumlocution of Holland v. United States, 348 U.S. 121, 139–140, 75 S.Ct. 127, 99 L.Ed. 150 (1954). I had thought that in that case the Supreme Court flatly rejected the theretofore often used expression that circumstantial evidence must be such as to exclude every reasonable hypothesis other than guilt, and had said, p. 140, 75 S.Ct. p. 137, that "[c]ircumstantial evidence in this respect is intrinsically no different from testimonial evidence." I also thought that this court more than once had recognized the controlling character of *Holland*. United States v. Francisco, 410 F.2d 1283, 1286 (8 Cir. 1969); United States v. Kye, 411 F.2d 120, 122 (8 Cir. 1969); United States v. Lodwick, supra, 410 F.2d at 1204.

I therefore cannot join the majority in their reversal of this bank robbery conviction, typified by Judge Lord as "amply justified," on the ground of insufficient evidence.